T.C. Memo. 2008-276


UNITED STATES TAX COURT


DEELDA L. WATSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11370-06.               Filed December 10, 2008.


<u>Peter J. Ressler</u>, for petitioner.

<u>James H. Harris, Jr.</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>:  Respondent has determined additions to tax arising from disallowed partnership losses relating to a partnership in which petitioner and her deceased husband invested in 1983.  The additions to tax are for petitioner's 1983 and 1985 taxable (calendar) years and are as follows:

| | Additions to Tax | |
|---|---|---|
| Year | Sec. 6653(a)(1) | Sec. 6653(a)(2) |
| 1983 | $220.10 | To be determined[1] |
| 1985 | 23.75 | To be determined[2] |

[1] Fifty percent of the statutory interest due on the $4,402 underpayment of tax for 1983.
[2] Fifty percent of the statutory interest due on the $475 underpayment of tax for 1985.

All section references are to the Internal Revenue Code in effect for the years in issue. We must decide whether negligence caused any of petitioner's 1983 and 1985 underpayments in tax, thereby rendering petitioner subject to the section 6653(a)(1) and (2) additions to tax. Petitioner bears the burden of proof.

FINDINGS OF FACT

Some facts are stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference. At the time she filed the petition, petitioner resided in Pennsylvania.

The Investment

In 1983, petitioner and her husband, U.S. Army Colonel Dwayne C. Watson (Colonel Watson; together, the Watsons), invested in Contra Costa Jojoba Research Partners (CCJRP).[1] The Watsons had been investing for 10 years and had at least $157,000 invested in mutual funds and various real estate, oil and gas,

---

[1] The parties have so stipulated, although stipulated documents relating to the Watsons' investment all refer to Contra Costa Jojoba Research Limited Partnership. We assume that the two descriptions are to the same partnership and will refer to that partnership as CCJRP, in accordance with the parties' stipulation of the Watsons' investment.

leasing, and cable television ventures.  In 1983, Colonel Watson was teaching at the U.S. Army War College in Carlisle, Pennsylvania, and petitioner had a small business for decorative painting.

Paul E. Vallely (Major General Vallely[2]) was a student of Colonel Watson's at the War College.  He was also the general partner of CCJRP.  Major General Vallely and Colonel Watson discussed CCJRP one day at the Watsons' home.  After about an hour reviewing documents, Colonel Watson decided to invest in CCJRP, and both he and petitioner signed the necessary documents.  For $5,500 cash and a promissory note for $8,250, the Watsons purchased a 2.857-percent limited partnership interest.  In evaluating the potential risks and rewards of CCJRP, Colonel Watson relied exclusively on Major General Vallely for advice.  Neither Colonel Watson nor petitioner made any independent investigation of CCJRP.  Among the documents that petitioners signed that day were a promissory note, an offeree questionnaire, a subscription agreement, and a limited guaranty agreement.  The subscription agreement represents that the subscriber has received a copy of a private placement memorandum with respect to CCJRP and CCJRP's agreement of limited partnership (CCJRP agreement).  The private placement memorandum claims among other things that the investment has "significant first year tax deductions of approximately 232% with subsequent year tax

---

[2] Apparently, Paul E. Vallely retired from the U.S. Army as a major general in 1991.  See McConnell v. Commissioner, T.C. Memo. 2008-167 n.7.

deductions."  The CCJRP agreement, including attachments (a research and development agreement and a license agreement), consists of 39 single-spaced pages.

For 1983 and 1985, the Watsons filed joint Federal income tax returns.  H&R Block prepared the Watsons' 1983 Federal income tax return.  Steven Clever (Mr. Clever), a certified public accountant, prepared the Watsons' 1985 Federal income tax return. With respect to CCJRP, the Watsons gave H&R Block and Mr. Clever only the relevant Schedules K-1, Partner's Share of Income, Credits, Deductions, etc.  The Watsons claimed losses from CCJRP of $12,500 and $1,290 on their Federal income tax returns for 1983 and 1985, respectively.

The Underpayments of Tax

On April 12, 1989, respondent mailed to CCJRP's tax matters partner notices of final partnership administrative adjustment for CCJRP's 1983, 1984, and 1985 tax years that disallowed certain losses claimed by CCJRP.  On July 13, 1989, in response to those notices, CCJRP's tax matters partner filed a petition in this court for review of the adjustments in a case styled Contra Costa Jojoba Research Partners, Charles B. Toepfer, Tax Matters Partner v. Commissioner, docket No. 17323-89 (Contra Costa).  On January 28, 1994, the parties to Contra Costa filed a stipulation to be bound by the Court's findings and decisions in Utah Jojoba I Research v. Commissioner, docket No. 7619-90 (Utah Jojoba I). We sustained the Commissioner's disallowance of claimed losses in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, and

entered a decision on January 8, 1998, which became final on April 9, 1998. On the basis of the stipulation to be bound, and following protracted efforts to find CCJRP's tax matters partner, the Court entered decision in Contra Costa on April 11, 2005.

Notices of Deficiency and Petition

Respondent issued to petitioner notices of deficiency dated March 13, 2006, for both 1983 and 1985, which (1) informed petitioner that the losses of $12,500 and $1,290 that she and her husband had claimed for 1983 and 1985 had been disallowed in accordance with the agreement of the parties in Contra Costa and (2) determined the additions to tax here in issue. In response to the notices, petitioner filed the petition.

OPINION

I. Section 6653(a)

Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of tax if "any part of any underpayment * * * is due to negligence or intentional disregard of rules or regulations". Section 6653(a)(2) imposes a further addition to tax equal to 50 percent of the interest due on the "portion of the underpayment * * * attributable to * * * negligence or intentional disregard".

"Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Fincher v. Commissioner, 105 T.C. 126, 140 (1995); Santa Monica Pictures, L.L.C. v. Commissioner, T.C. Memo. 2005-104. In cases involving deductions resulting from a

taxpayer's investments, courts generally look both to the reasonableness of the underlying investment and to the taxpayer's position taken on the return in evaluating whether the taxpayer was negligent. E.g., McDonough v. Commissioner, T.C. Memo. 2007-101. In Neonatology Associates, P.A. v. Commissioner, 299 F.3d 221, 234 (3d Cir. 2002), affg. 115 T.C. 43 (2000), the Court of Appeals said: "When * * * a taxpayer is presented with what would appear to be a fabulous opportunity to avoid tax obligations, he should recognize that he proceeds at his own peril." That is, a taxpayer must make a "proper investigation or exercise due diligence to verify the * * * tax legitimacy" of such an investment. Id. at 233.

II. Arguments of the Parties

Petitioner argues that the negligence additions are inappropriate because she and her husband were moderate-income investors who invested to make a profit rather than to obtain tax benefits and who relied in good faith on investment advisers and tax professionals.

Respondent counters that the negligence additions are appropriate because petitioner and her husband were experienced investors who had a duty to investigate CCJRP because of the obviously suspect tax benefits. Moreover, the Watsons consulted only with the promoter of CCJRP before making the investment and provided insufficient facts to their return preparers to claim reliance on their tax expertise.

III. <u>Discussion</u>

This is one of a series of cases involving additions to tax for negligence associated with investments in CCJRP. E.g., <u>Heller v. Commissioner</u>, T.C. Memo. 2008-232; <u>McConnell v. Commissioner</u>, T.C. Memo. 2008-167; <u>Ghose v. Commissioner</u>, T.C. Memo. 2008-80. In <u>Heller</u>, we said the following about CCJRP:

> CCJRP's underlying activity lacked legitimacy, as we decided in Utah Jojoba I. See <u>Utah Jojoba I Research v. Commissioner</u>, <u>supra</u> ("[W]e hold that Utah I was not actively involved in a trade or business and also lacked a realistic prospect of entering a trade or business."); see also <u>Welch v. Commissioner</u>, T.C. Memo. 2002-39. Because CCJRP and the jojoba partnership at issue in Utah Jojoba I are essentially identical, we need not rehash in detail the license agreement and the research and development (R & D) agreement entered into between CCJRP and U.S. Agri Research & Development Corp (the same entity with which the partnership at issue in Utah Jojoba I entered into a license agreement and an R & D agreement). Suffice it to say that "the R & D agreement was designed and entered into solely to provide a mechanism to disguise the capital contributions of the limited partners as currently deductible expenditures and thus reduce the cost of their participation in the farming venture." <u>Utah Jojoba I Research v. Commissioner</u>, <u>supra</u>. As the Court has stated in a number of other cases involving nearly identical jojoba partnerships:
>
> > First, the principal flaw in the structure of Blythe II [another jojoba R & D partnership subject to a stipulation to be bound by the outcome in <u>Utah Jojoba I</u>] was evident from the face of the very documents included in the offering. A reading of the R & D agreement and licensing agreement, both of which were included as part of the offering, plainly shows that the licensing agreement canceled or rendered ineffective the R & D agreement because of the concurrent execution of the two documents. Thus, the partnership was never engaged, either directly or indirectly, in the conduct of any research or experimentation. Rather, the partnership was merely a passive investor seeking royalty returns pursuant to the

> licensing agreement.  Any experienced
> attorney capable of reading and understanding
> the subject documents should have understood
> the legal ramifications of the licensing
> agreement canceling out the R & D agreement.
> However, petitioners never consulted an
> attorney in connection with this investment,
> nor does it appear that they carefully
> scrutinized the offering themselves.

Christensen v. Commissioner, T.C. Memo. 2001-185; see
Finazzo v. Commissioner, T.C. Memo. 2002-56; Serfustini
v. Commissioner, T.C. Memo. 2001-183; Carmena v.
Commissioner, T.C. Memo. 2001-177; Nilsen v.
Commissioner, T.C. Memo. 2001-163.

The foregoing analysis leads to the conclusion that an investment in CCJRP was not a reasonable investment from an income tax perspective.  Petitioner argues, however, that she and her husband did not invest in CCJRP for income tax benefits.  She testified that Colonel Watson never mentioned to her any tax breaks associated with the investment, and she argues:  "Here the record clearly establishes that * * * Petitioner and Colonel Watson entered * * * [into CCJRP] for the purposes of making money, rather than to * * * [obtain] tax breaks."  Even were we to accept that no purpose of the Watsons' in investing in CCJRP was to obtain tax breaks (which we do not), the tax benefits associated with an investment in CCJRP were prominently announced in the private placement memorandum that we assume Colonel Watson received from Major General Vallely.  The private placement memorandum represents that an investment in CCJRP yields first-year tax deductions of approximately 232 percent and subsequent tax year deductions.  Even if Colonel Watson were indifferent to the approximately 2½-to-1 tax writeoff that he would claim for

1983, and the deductions he would claim for subsequent years, he was on notice that a generous tax benefit accompanied an investment in CCJRP.  The Watsons were sufficiently experienced investors that the generous tax benefits accompanying an investment in CCJRP should have raised a red flag.  See Ghose v. Commissioner, supra  ("The deduction of such a large loss in proportion to petitioners' investment claimed so close to when that investment was made should have raised a red flag to petitioners regarding the propriety of deductions for losses related to their investment in CCJRP."); Christensen v. Commissioner, T.C. Memo. 2001-185 (rejecting argument that investment motivated "solely by the potential to earn a profit" immunized taxpayers from obligation to understand tax consequences of investment).  A reasonable and ordinarily prudent person would have seen that red flag and would have made a proper investigation or would have exercised due diligence to verify the tax legitimacy of the advertised tax benefits.  See Neonatology Associates, P.A. v. Commissioner, supra.  Petitioner apparently agrees that that was the proper course of action because she claims that she and her husband relied on investment advisers and tax professionals.

Reasonable reliance on professional advice may serve as a defense to additions to tax for negligence.  See United States v. Boyle, 469 U.S. 241, 251 (1985).  In evaluating the potential risks and rewards of CCJRP, Colonel Watson relied exclusively on Major General Vallely for advice.  Nevertheless, petitioner has

failed to show that Major General Vallely had any demonstrated tax expertise.  Moreover, she testified that Major General Vallely was the man "selling" the investment in CCJRP to her and Colonel Watson.  A reasonable and ordinarily prudent person would not rely exclusively on the promoter of such an obviously tax-risky and complex investment.  See LaVerne v. Commissioner, 94 T.C. 637, 652 (1990) ("The failure of petitioners to look beyond the promotional materials supplied by the salespeople or to consult independent advisers on so complex a matter as the proposed investments in The Barbados partnerships is unreasonable and is not in keeping with the standard of the ordinarily prudent person."), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); McConnell v. Commissioner, T.C. Memo. 2008-167 (rejecting reliance on Major General Vallely's advice as a defense to negligence additions relating to an investment in CCJRP).  The Watsons' apparent blind faith in Major General Vallely constitutes a failure to exercise due care before investing in CCJRP.

Finally, petitioner argues that she and Colonel Watson relied on professional tax return preparers to prepare their 1983 and 1985 returns.  The fact that professional tax return preparers prepared those returns is insufficient to shield them from liability for the negligence additions in question.  In all likelihood, the Watsons' tax return preparers merely transferred

the losses from the Schedules K-1 provided by CCJRP onto the Watsons' returns. There is no evidence that suggests otherwise.

Petitioner has failed in her defense to the section 6653(a)(1) and (2) additions to tax determined by respondent.

IV. Conclusion

On the premises stated,

Decision will be entered for respondent.