T.C. Memo. 2009-31


UNITED STATES TAX COURT


GARY W. SWANSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14032-06.               Filed February 10, 2009.


<u>Vivian D. Hoard</u>, for petitioner.

<u>Horace Crump</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


GOEKE, <u>Judge</u>:  This case is before the Court on a petition
for redetermination of an affected items notice of deficiency
sent April 17, 2006, in which respondent determined that
petitioner is liable for additions to tax for 1983 as follows:

Additions to Tax

| Year | Sec. 6653(a)(1) | Sec. 6653(a)(2) |
| --- | --- | --- |
| 1983 | $199.35 | [1] |

[1]50 percent of the interest due on $3,987.

The notice also included a statement that interest would accrue and be assessed at 120 percent of the underpayment rate in accordance with section 6621(c). The additions to tax are "affected items" in that they were determined with reference to a deficiency owing from petitioner as a result of adjustments to partnership items resulting from a final partnership proceeding involving a jojoba plant venture known as California Jojoba Ventures (California Jojoba). The issue for decision is whether part of petitioner's underpayment of tax was due to negligence. For the reasons stated herein, we find that respondent improperly imposed the section 6653(a)(1) and (2) additions to tax. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts and accompanying exhibits are incorporated herein by this reference.

Petitioner resided in Georgia at the time the petition was filed.

Petitioner received an associate's degree in hotel and restaurant management from the State University of New York,

Delhi, in 1973. Petitioner's school transcript showed that he received credit for a class titled "HRI Accounting I" but did not list any other courses in Federal income tax or accounting. Petitioner was 19 years old when he received his associate's degree.

After graduating petitioner worked as an assistant manager at a Burger King in Long Island, New York, and as the manager of a snack bar at the Rochester Institute of Technology. In 1977 petitioner moved to California, where he worked as an assistant manager at a Charlie Brown restaurant. By 1981 petitioner had risen to the level of district manager, overseeing four restaurants in Orange County, California.

Petitioner was still a district manager when he met Pat Markel (Mr. Markel). Mr. Markel was registered in the State of California to prepare tax returns and therefore was required to meet initial and continuing tax education requirements. Cal. Bus. & Prof. Code secs. 22253(a)(1), 22255 (West 2008). Petitioner first contacted Mr. Markel in 1981 or 1982 when petitioner received a flyer Mr. Markel had distributed advertising ways to lower mortgage payments. Mr. Markel began preparing petitioner's tax returns, and petitioner began to receive some tax planning tips which later expanded into some investment planning. Petitioner paid Mr. Markel for his advice and tax return preparation at $75 per hour. Mr. Markel also sold

insurance but not to petitioner.  Petitioner was interested in different investment strategies with the dual goals of long-term investment and raising money to open his own restaurant.

Mr. Markel shared office space with the firm of Hermes & Milano.  Mr. Markel was not an employee of Hermes & Milano but rented space and computers from the firm.  Mr. Markel also used Hermes & Milano's tax preparation software to prepare annual income tax returns.  Mr. Markel would prepare returns using this software, then pay Hermes & Milano a fee per return.  Mr. Markel had his own business cards but at times used business cards showing his name along with the firm name of Hermes & Milano.

Mr. Hermes and Mr. Milano together formed California Jojoba. Mr. Markel did not take part in the formation and management of California Jojoba.  Mr. Markel testified that he did not receive any payments from California Jojoba.

Mr. Markel recommended California Jojoba to petitioner as a possible investment opportunity.  Mr. Markel had learned of jojoba as an investment because he shared office space with Hermes & Milano and because Mr. Markel's sister was also looking into investing in another jojoba venture.  When he was in discussions about California Jojoba with petitioner, Mr. Markel visited a jojoba farm which purportedly was associated with California Jojoba.

After reading some promotional materials on California Jojoba and discussing the opportunity with Mr. Markel, petitioner met with Mr. Hermes to further discuss investing. Mr. Markel set up the meeting between petitioner and Mr. Hermes but was not present. At the meeting with Mr. Hermes, petitioner reviewed materials explaining jojoba oil operation. Petitioner also viewed a video which explained the potential of jojoba oil, showed the location of the jojoba farm, and explained different applications of the oil. Petitioner never visited the jojoba farm himself.

At the conclusion of the meeting with Mr. Hermes, petitioner again spoke with Mr. Markel about the jojoba opportunity, and at a later meeting petitioner and Mr. Markel discussed the documents petitioner received while meeting with Mr. Hermes, including the offering memorandum and the legal opinion regarding California Jojoba. Mr. Markel was familiar with these types of documents because of his sister's consideration of investing in another jojoba partnership.

In 1983 Mr. Markel's jojoba experience consisted of a trip to a jojoba farm and discussions with two certified public accountants (C.P.A.s) who were independent from Hermes & Milano about the tax aspects of the transaction. Mr. Markel testified that those C.P.A.s confirmed the viability of the transaction

under Federal tax laws. Mr. Markel also experimented with the use of jojoba oil in his car.

Petitioner decided to invest in California Jojoba after reviewing the promotional materials and discussing them with Mr. Markel. Mr. Markel did not sell the investment in California Jojoba to petitioner; instead, petitioner met with either Mr. Hermes or Mr. Milano to effect the sale. Petitioner was motivated by the opportunity to profit but was aware at the time he invested that there were tax benefits in addition to any possible income. Petitioner paid approximately $5,000 up front and signed a promissory note for the remaining $14,250. The $5,000 cash petitioner invested represented his life savings in addition to the equity in his home.

Mr. Markel prepared petitioner's 1983 Form 1040, U.S. Individual Income Tax Return. Beneath Mr. Markel's signature the firm name of Hermes & Milano was listed. Attached to petitioner's Form 1040 was a Schedule E, Supplemental Income Schedule. Petitioner's Schedule E showed a net loss from partnerships of $13,017. As a result of losses claimed, petitioner received a refund which was roughly $3,860 greater than that which he would have received had he not claimed the Schedule E loss.[1] Mr. Markel continued to prepare and file tax

---

[1]An unrelated error on petitioner's return accounts for the difference between the benefit petitioner received on the basis
(continued...)

returns on petitioner's behalf until petitioner no longer resided in California.

On October 3, 1991, respondent sent a notice of final partnership administrative adjustment (FPAA) for the 1983 taxable year to the tax matters partner of California Jojoba. The FPAA disallowed claimed research and development costs and disallowed $443,198 of California Jojoba's claimed loss.

A petition on behalf of California Jojoba was filed on December 23, 1991. On November 1, 1993, the parties in Cal. Jojoba Investors v. Commissioner, docket No. 29993-91, filed a stipulation to be bound setting forth their agreement that the outcome of this case was to be determined by the result reached in Utah Jojoba I Research v. Commissioner, docket No. 7619-90. On January 5, 1998, the Court issued an opinion in that case sustaining respondent's adjustments, and decision was entered on January 8, 1998. See Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6 (Utah Jojoba I).

On February 25, 1999, respondent filed a motion for entry of decision or to appoint a tax matters partner in the case at docket No. 29993-91, asserting that pursuant to the stipulation to be bound a decision should be entered in accord with the

[1](...continued)
of his claimed loss from investing in California Jojoba and the deficiency determined in the notice of deficiency issued to petitioner.

Court's holding in Utah Jojoba I or, in the alternative, that a new tax matters partner be appointed.

On April 11, 2005, the Court's order to show cause was deemed absolute, and respondent's motion for entry of decision was granted. The Court further ordered that the partnership item adjustments for California Jojoba's 1983 taxable year were correct as determined and set forth in the FPAA dated October 3, 1991.

Respondent examined petitioner's 1983 tax return and disallowed the claimed loss relating to petitioner's investment in California Jojoba. On April 17, 2006, respondent issued the affected items notice of deficiency with respect to petitioner's 1983 tax year imposing the section 6653(a)(1) and (2) additions to tax. On July 21, 2006, petitioner timely filed a petition with this Court alleging that respondent erred in imposing the additions to tax. A trial was held on December 13, 2007, at the Court's trial session in Atlanta, Georgia.

OPINION

## I. Section 6653(a)(1) and (2)

The issue for decision is whether petitioner is liable for additions to tax under section 6653(a)(1) and (2) with respect to the underpayment of tax attributable to his investment in California Jojoba. Petitioner argues that he is not subject to the additions to tax for negligence because he had a profit

motive for his investment, he received a tax refund less than the cash he invested, and he reasonably relied on the advice of his financial adviser, Mr. Markel, in making the investment in California Jojoba.

Section 6653(a)(1) imposes an addition to tax in an amount equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes an addition to tax in an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations.

Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under the circumstances. See Anderson v. Commissioner, 62 F.3d 1266, 1271 (10th Cir. 1995), affg. T.C. Memo. 1993-607; Neely v. Commissioner, 85 T.C. 934, 947 (1985). The focus of the inquiry is the reasonableness of the taxpayer's actions in view of the taxpayer's experience, the nature of the investment, and the taxpayer's actions in connection with the transaction. See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973). When considering the negligence addition, we evaluate the particular facts of each case, judging the relative sophistication of the taxpayers as well as the manner in which the taxpayers approached their investment. See Merino v.

Commissioner, 196 F.3d 147, 154 (3d Cir. 1999) ("The inquiry into a taxpayer's negligence is highly individualized, and turns on all of the surrounding circumstances including the taxpayer's education, intellect, and sophistication."), affg. T.C. Memo. 1997-385; Korchak v. Commissioner, T.C. Memo. 2005-244; Turner v. Commissioner, T.C. Memo. 1995-363; see also Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408. Whether a taxpayer is negligent in claiming a tax deduction "depends upon both the legitimacy of the underlying investment, and due care in the claiming of the deduction." Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217; see also Greene v. Commissioner, T.C. Memo. 1998-101, affd. without published opinion 187 F.3d 629 (4th Cir. 1999).

A taxpayer may avoid liability for negligence penalties under certain circumstances if the taxpayer reasonably relied on competent professional advice. See Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on another issue 501 U.S. 868 (1991). Such reliance, however, is "not an absolute defense to negligence, but rather a factor to be considered." Id. For reliance on professional advice to relieve a taxpayer from the negligence addition to tax, the taxpayer must show that the professional adviser had the expertise and knowledge of the pertinent facts to provide informed advice on

the subject matter.  See id.; see also Nilsen v. Commissioner, T.C. Memo. 2001-163.  The advice must be from competent and independent parties, not from the promoters of the investment. LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991).  Reliance on a professional adviser can be inadequate when the taxpayer and his adviser knew nothing about the nontax business aspects of the venture.  Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983).  In order for reliance on professional advice to excuse a taxpayer from the negligence addition to tax, the reliance must be reasonable, in good faith, and based upon full disclosure.  Zfass v. Commissioner, 118 F.3d 184, 188 (4th Cir. 1997), affg. T.C. Memo. 1996-167; Freytag v. Commissioner, supra at 888.  The Supreme Court has stated that because most taxpayers are not competent to discern errors in the substantive advice of an adviser, to require that taxpayer to seek a second opinion "would nullify the very purpose of seeking the advice of a presumed expert in the first place."  United States v. Boyle, 469 U.S. 241, 251 (1985) (discussing the availability of a defense of reliance on an adviser for substantive tax advice but not for attempted reliance on an adviser concerning the timely filing of a return).

The facts pertinent to the present case relating to the structure, formation, and operation of California Jojoba are as set forth above and discussed in Utah Jojoba I. The offering memorandum identified U.S. Agri as the contractor under the R&D contract. In addition, a license agreement between California Jojoba and U.S. Agri granted U.S. Agri the exclusive right to use all technology developed for the partnership for 40 years in exchange for a royalty of 85 percent of the products produced from the technology. The R&D contract and the license agreement were executed concurrently.

According to its terms, the R&D contract expired upon the partnership's execution of the license agreement. Because the two contracts were executed concurrently, amounts paid by the partnership to U.S. Agri were not paid pursuant to a valid R&D contract but rather were passive investments in a farming venture under which the investors' return, if any, was to be in the form of royalties pursuant to the license agreement. Thus, as the Court held in Utah Jojoba I. the partnership was never engaged in research or experimentation, either directly or indirectly. Moreover, the Court found that U.S. Agri's attempt to farm jojoba commercially did not constitute R&D, thereby concluding that the R&D contract was designed and entered into solely to decrease the limited partners' cost of investing in a jojoba partnership through large, up-front deductions for expenditures that were

actually capital contributions.  The Court further concluded that the partnership was not involved in a trade or business and had no realistic prospect of entering into a trade or business with respect to any technology that was to be developed by U.S. Agri.

We have observed that a guiding principle of our decisions "is that similarly situated taxpayers should be treated similarly", Heller v. Commissioner, T.C. Memo. 2008-232 n.4, but also that reasonableness inquiries "are highly factual and every case must be decided on its particular merits", Altman v. Commissioner, T.C. Memo. 2008-290.

In a majority of the jojoba cases to come before this Court taxpayers have attempted to show reasonable cause for their actions by claiming reliance on a variety of individuals:  (1) Investment advisers, (2) attorneys, (3) C.P.A.s, or (4) individuals involved in jojoba farming.  On the specific facts of those individual cases we have found the claimed reliance to be unreasonable.

In most of the above cases we have found reliance to be unreasonable because the individual upon whom the taxpayer was claiming reliance had a financial interest in the sale of the shelter.  The presence of an obvious conflict of interest in the sale of those partnership units should have triggered a more in-depth review by the respective taxpayers.  See, e.g., Watson v. Commissioner, T.C. Memo. 2008-276; Ghose v. Commissioner, T.C.

Memo. 2008-80; Bronson v. Commissioner, T.C. Memo. 2002-260;
Finazzo v. Commissioner, T.C. Memo. 2002-56; Kellen v.
Commissioner, T.C. Memo. 2002-19; Christensen v. Commissioner,
T.C. Memo. 2001-185; Robnett v. Commissioner, T.C. Memo. 2001-17;
Harvey v. Commissioner, T.C. Memo. 2001-16; Hunt v. Commissioner,
T.C. Memo. 2001-15; Fawson v. Commissioner, T.C. Memo. 2000-195;
Downs v. Commissioner, T.C. Memo. 2000-155.

In other situations, we have found reliance to be
unreasonable where a taxpayer claimed to have relied upon an
independent adviser because the adviser either did not testify or
testified too vaguely to convince us that the taxpayer was
reasonable in relying on the adviser's advice regarding the
propriety of the claimed deductions.  See, e.g., Helbig v.
Commissioner, T.C. Memo. 2008-243; Heller v. Commissioner, T.C.
Memo. 2008-232; Welch v. Commissioner, T.C. Memo. 2002-39;
Christensen v. Commissioner, supra; Serfustini v. Commissioner,
T.C. Memo. 2001-183; Nilsen v. Commissioner, T.C. Memo. 2001-163;
Hunt v. Commissioner, supra; Glassley v. Commissioner, T.C. Memo.
1996-206.

We have also rejected as unreasonable a taxpayer's claimed
reliance on an independent adviser where the record did not show
that the adviser did any independent research regarding the
deductions claimed by the taxpayer.  See, e.g., Lopez v.
Commissioner, T.C. Memo. 2001-278, affd. 92 Fed. Appx. 571 (9th

Cir. 2004); Christensen v. Commissioner, supra; Carmena v. Commissioner, T.C. Memo. 2001-177.

We have also found taxpayers negligent where they claimed reliance on the offering and placement memoranda the taxpayers reviewed when evaluating the investment opportunity. We have found this argument unpersuasive because the documents did not express an opinion regarding the propriety of the taxpayer's claimed deductions. See Bass v. Commissioner, T.C. Memo. 2007-361; Henn v. Commissioner, T.C. Memo. 2002-261.

In other cases we have found taxpayers negligent where they did not even bother to examine any documents relating to the investment before making a decision to invest. See Ruggiero v. Commissioner, T.C. Memo. 2001-162.

Taxpayers have in other situations attempted to show reasonable cause by claiming reliance on their tax return preparers. However, we have found this reliance unreasonable where the record showed only that a return preparer simply copied information from the partnership return to the taxpayer's return without any investigation into the propriety of the claimed deductions. See McConnell v. Commissioner, T.C. Memo. 2008-167; Bronson v. Commissioner, supra.

Lastly, taxpayers have often attempted to avoid the imposition of penalties by claiming reliance on professors or other individuals, uneducated concerning tax matters, involved in

the farming or commercial use of jojoba.  We have found reliance on these advisers unreasonable because they lacked any knowledge of tax law.  See, e.g., Finazzo v. Commissioner, supra; Kellen v. Commissioner, supra.

Notwithstanding the foregoing, petitioner argues that he was not negligent because he was totally unsophisticated in tax matters, believed he was investing in a legitimate business that would return a steady stream of income, and relied on the advice of a professional, Mr. Markel.  Although we have upheld the imposition of section 6653 additions to tax in all jojoba partnership-related cases to come before us, investment in a jojoba partnership does not make a taxpayer strictly liable for negligence penalties.  To uphold additions to tax simply because a taxpayer invested in a jojoba partnership that was later found to be improper would violate the requirement that we consider the taxpayer's actions in the light of his experiences and his actions in connection with the transaction.  See Henry Schwartz Corp. v. Commissioner, 60 T.C. at 740.  As stated above, we must consider all of the facts and circumstances surrounding his case in order to determine whether petitioner was negligent.

Petitioner testified convincingly that he was not seeking an unreasonable tax benefit in making the investment because he knew that the tax benefit would be less than his cash outlay.  Mr. Markel and petitioner both testified convincingly that

petitioner's primary motivation in making the investment was to profit, and the objective circumstances of petitioner's tax bracket support this testimony. Obviously, petitioner was misinformed. However, petitioner did not have much formal education in tax or financial matters nor any significant financial or investment experience.

Petitioner trusted Mr. Markel and provided him with documents relevant to the investment. Mr. Markel was a licensed tax return preparer in California, one of only two States to require tax preparers to be licensed. Along with this licensing requirement, California requires tax return preparers to meet annual continuing education requirements.

Mr. Markel testified that he (1) visited the jojoba farm in 1983 and (2) reviewed the documents himself and discussed the investment and tax aspects with two C.P.A.s who were independent of Hermes & Milano.

We find that petitioner had a good-faith belief that Mr. Markel was acting in his best interest and was recommending a valid financial investment. The issue for us to decide is whether petitioner was negligent in believing this was a legitimate investment both financially and for tax purposes. We find that petitioner entered into this investment with a good-faith belief that it was legitimate as a financial investment. His cash investment represented his life savings in 1983; and

even if petitioner realized that he would recover almost 80 percent of the cash with the additional tax refund he would receive, the remaining $1,100 petitioner invested after the tax benefit was a major expenditure for him.  Petitioner also had virtually no prior investment experience.  Therefore, we believe petitioner trusted Mr. Markel's advice that this was a good financial risk separate from any tax benefits he might receive.  Taking into account petitioner's limited educational background in finance and Federal income tax and his employment history, we must next determine whether petitioner's decision to claim the deduction on his Federal tax return was reasonable.  We first must determine whether the tax benefit was "too good to be true."  See McCrary v. Commissioner, 92 T.C. 827, 850 (1989).  Petitioner's tax refund was less than his cash investment, and he was an unsophisticated investor.  We find these factors distinguish petitioner's situation from those in which the tax benefit was unreasonable on its face.

Petitioner was not a high-income individual seeking a tax shelter; rather, he had a naive belief that he was taking a reasonable financial risk in order to receive a significant nontax return over time.  Petitioner was involved in monitoring his investment.  To his unsophisticated analysis, the loss on his return was not out of line considering the fact that California

Jojoba had contacted the partners in the hopes of raising additional funds.

Although he was wrong about the vitality of the investment, petitioner's belief in its economic substance was in good faith. At the time petitioner filed his 1983 Form 1040, he believed that Mr. Markel was a tax professional who was independent of Hermes & Milano, was competent to prepare petitioner's tax returns, and had verified the tax consequences of the transaction with independent C.P.A.s. Petitioner did not seek any tax advice beyond that of Mr. Markel, but we do not find his failure to do so to be negligent given his modest resources and lack of financial sophistication. See United States v. Boyle, 469 U.S. at 251. Looking at these specific facts as we must, we find that the section 6653(a)(1) and (2) additions to tax should not be imposed.

II. Section 6621

Lastly, petitioner argues that his decision to invest in California Jojoba was not tax motivated; therefore, section 6621(c) interest should not apply. This Court generally does not have jurisdiction to review assessment of section 6621(c) tax-motivated interest in affected items proceedings. See White v. Commissioner, 95 T.C. 209 (1990); Korchak v. Commissioner, T.C. Memo. 2005-244; see also Ertz v. Commissioner, T.C. Memo. 2007-15. A narrow exception to this rule may apply if a taxpayer has

paid the assessed tax-motivated interest and subsequently invokes the overpayment jurisdiction of this Court under section 6512(b). See Barton v. Commissioner, 97 T.C. 548 (1991). Petitioner does not claim that he has paid the interest. Therefore, we do not have jurisdiction to consider section 6621(c). See Bass v. Commissioner, T.C. Memo. 2007-361.

Petitioner nevertheless argues that he should be able to contest the imposition of tax-motivated interest in this affected items proceeding because respondent did not provide proper notice of the underlying partnership administrative proceedings. Petitioner draws support for this argument from Crowell v. Commissioner, 102 T.C. 683 (1994). If respondent did not provide petitioner with proper notice of the partnership proceedings and petitioner's share of partnership items is treated as a nonpartnership item, the validity of the affected items deficiency notice is in question. See id. at 691. The Commissioner cannot issue a valid affected items deficiency notice to a partner if that partner's share of partnership items is entitled to nonpartnership item treatment. Id. Where the validity of an affected items deficiency notice is questioned in this manner, the Commissioner must demonstrate that he complied with the notice requirements set forth in section 6223(a). Id. at 691-692. As is the case with a notice of deficiency, the validity of properly mailed partnership notices is not contingent

upon actual receipt by either the tax matters partner or a notice partner.  Id. at 692; Yusko v. Commissioner, 89 T.C. 806, 810 (1987); McClaskey v. Commissioner, T.C. Memo. 2008-147.

Petitioner testified that he never received any notices concerning the administrative proceedings related to California Jojoba.  The record, however, indicates that respondent did in fact send to petitioner both notice of the underlying partnership proceedings and the FPAA.  As with an FPAA, actual receipt of the notice of beginning of administrative proceedings is not necessary.  Crowell v. Commissioner, supra at 692.  Accordingly, we lack jurisdiction to consider the imposition of section 6621(c) tax-motivated interest.

To reflect the foregoing,

Decision will be entered

for petitioner as to the

section 6653(a)(1) and (2)

additions to tax.