T.C. Memo. 2009-121


UNITED STATES TAX COURT


TIGERS EYE TRADING, LLC, SENTINEL ADVISORS, LLC,
TAX MATTERS PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14510-05.                    Filed May 27, 2009.


In a notice of final partnership administrative adjustment (FPAA) issued to TET regarding a transaction of the type the IRS determined in Notice 2000-44, 2000-2 C.B. 255, is a "listed transaction", R determined inter alia that TET was not a partnership, had no business purpose other than tax avoidance, lacked economic substance, and was an economic sham for Federal income tax purposes. In the FPAA R determined that amounts reported on the 1999 partnership return for contributions, distributions, other deductions, and other losses were reduced to zero, that TET's partners' outside bases in their partnership interests were zero, and that accuracy-related penalties determined at the partnership level should be imposed at the partner level.

L and one of the three grantor trusts (PP) L used to engage in the transaction challenge the proposed adjustments in the FPAA and wish in this partnership-level proceeding to raise L's reasonable cause defenses

to accuracy-related penalties applicable to any deficiency resulting from the FPAA adjustments to partnership items. L claims that, in reporting losses from the transaction on his return, he relied on the advice of professionals, including two attorneys and a C.P.A., and a written legal opinion of CM to L and the three grantor trusts on the tax consequences of the transaction.

PP has filed a motion for partial summary judgment to declare invalid sec. 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3838 (Jan. 26, 1999) (the temporary regulation), on the ground that it would prevent PP and L from raising in this partnership-level proceeding partner-level reasonable cause defenses to accuracy-related penalties applicable to any deficiency of L resulting from the FPAA adjustments to partnership items.

R has filed a motion in limine to exclude from evidence PP's expert report prepared by SS that the legal opinion of CM on the tax consequences of the transaction was of such quality and character that PP and L could reasonably rely on the opinion in preparing their income tax returns. R argues that the report should be excluded on the alternative grounds that it relates solely to PP's partner-level defenses and that it expresses legal conclusions. Alternatively, R asserts that portions of the report should be excluded because they constitute advocacy. R is also asserting that CM was a promoter of TET and the transaction, that L and his grantor trusts could not reasonably rely on the opinion of a promoter, and that the status of CM as a promoter should be determined in this partnership-level proceeding.

Held: Following New Millennium Trading, LLC v. Commissioner, 131 T.C. ___ (2008), the temporary regulation is valid and potentially applicable in the case at hand, so that, should the Court sustain R's determinations in the FPAA that TET or PP's transactions with TET should be disregarded and that all other requirements for application of the accuracy-related penalties have been satisfied, PP may not assert in this partnership-level proceeding any partner-level defenses to application of the penalties; PP's motion for partial summary judgment will be denied.

*Held*, further: We have jurisdiction in this partnership-level proceeding to decide whether CM was a promoter.

*Held*, further: If the Court should decide that CM is not a promoter of the transactions at issue, the reasonableness of L's reliance on the CM opinion, as well as his reliance on the advice of his personal attorneys and C.P.A., would be a partner-level defense as defined in the temporary regulation that would not be assertable in this partnership-level proceeding because it would require the Court to consider factors that are personal to L, such as his education and business experience and the nature and length of his relationship with the adviser, and would require the production of evidence unrelated to the underlying adjustments in the FPAA.

*Held*, further: PP's expert report consists of legal discussion and argument; R's motion in limine will be granted and the expert's report excluded from evidence, irrespective of whether CM is determined to be a promoter.

Felix B. Laughlin and Mark D. Allison, for petitioner, Sentinel Advisors, LLC, tax matters partner.

David De Coursey Aughtry, Hale E. Sheppard, and William E. Buchanan, for A. Scott Logan, Trustee, A. Scott Logan Grantor Retained Interest Annuity Trust I, a partner other than the tax matters partner.

James E. Gray, William Bogardus, Timothy B. Heavner, and David B. Flassing, for respondent.

CONTENTS

Background . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . 19

I.   TEFRA Procedures and Partnership Items . . . . . . . . 19

     A.   Partnership Items . . . . . . . . . . . . . . . 20
     B.   Affected Items . . . . . . . . . . . . . . . . . 21
     C.   Penalties and Defenses to Penalties . . . . . . . 22
     D.   Exceptions to Application of TEFRA Procedures . . . 26

II.  Petitioner's Motion To Invalidate Temporary Regulation . 29

III. Respondent's Motion in Limine . . . . . . . . . . . . . 33

     A.   Reasonable Cause Defense to Accuracy-Related
          Penalties . . . . . . . . . . . . . . . . . . . . 33
     B.   Respondent's Position in Motion in Limine . . . . 36
     C.   Status as Promoter of Partnership Determined in
          Partnership-Level Proceeding . . . . . . . . . . 38
     D.   Tax Court's Jurisdiction To Decide Defenses to
          Applicability of Penalty That Are Not Partner-
          Level Defenses Defined by Temporary Regulation . . 43
     E.   Partner-Level Defense: Definition . . . . . . . . 45
          1.   Personal to the Partner . . . . . . . . . . 46
          2.   Depends on Partner's Separate Return . . . . . 48
          3.   Cannot Be Determined at Partnership Level . . 50
          4.   If Curtis Mallet Was a Promoter . . . . . . 52
          5.   If Curtis Mallet Was Not a Promoter . . . . . 54
          6.   Conclusion . . . . . . . . . . . . . . . . . 54
     F.   Legal Conclusions and Advocacy of Mr. Logan's
          Position in the Smith Report . . . . . . . . . . 55

Afterword . . . . . . . . . . . . . . . . . . . . . . . . . . 60

MEMORANDUM OPINION


     BEGHE, Judge:  This proceeding to determine the validity of

respondent's notice of final partnership administrative

adjustment (FPAA) is before the Court on two interrelated

motions:  Motion for partial summary judgment filed under Rule 121[1] on behalf of participating partner; and motion in limine filed under Rules 50 and 143(f) by respondent.

By the partial summary judgment motion, A. Scott Logan (Mr. Logan) as Trustee for A. Scott Logan Grantor Trust I (Logan Trust I or participating partner), a partner other than the tax matters partner, asks us to declare invalid section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3838 (Jan. 26, 1999) (sometimes the temporary regulation), implementing section 6221 as amended by the Taxpayer Relief Act of 1997 (TRA 1997), Pub. L. 105-34, sec. 1238(a), 111 Stat. 1026, because it would prevent participating partner and Mr. Logan from interposing partner-level defenses to accuracy-related penalties in this partnership-level proceeding.[2]  For convenience and simplicity, we sometimes refer to participating partner as Mr. Logan.

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for 1999, the year at issue.

[2]Participating partner also filed a motion for partial summary judgment "regarding confirmation of Code and caselaw as to contingent obligations", seeking a ruling that Helmer v. Commissioner, T.C. Memo. 1975-160, requires a holding that "a contingent obligation such as the Sold Euro Option each of the Logan Trusts sold to AIG falls short of a fixed 'liability' for section 752 and other federal income tax purposes".  By order dated Aug. 5, 2008, we denied the motion for a variety of reasons.

By the motion in limine respondent asks us to exclude from evidence an expert report and testimony that a legal opinion on the tax consequences of the transactions at issue was of such quality and character that Mr. Logan could reasonably rely on it in preparing his income tax returns. By respondent's response to Mr. Logan's motion, Mr. Logan's reply to that response, Mr. Logan's opposition to respondent's motion, respondent's reply to that opposition, and respondent's supplement to respondent's motion, the parties have joined issue on the subjects of the motions.

Petitioner, Sentinel Advisors, LLC (Sentinel), the tax matters partner of Tigers Eye Trading, LLC (Tigers Eye), has no direct financial interest in the outcome of this case. Thus, Mr. Logan, as trustee of Logan Trust I, is wielding the laboring oar in this proceeding.

In his motion for partial summary judgment Mr. Logan asserts that in preparing his income tax returns he reasonably relied on the opinions of personal advisers--attorneys and his accountant-- as well as an opinion letter and memorandum of the law firm of Curtis, Mallet-Prevost, Colt & Mosle LLP (Curtis Mallet) on the income tax consequences of the transactions at issue. Mr. Logan submitted to the Court a notice of expert witness in which he identified Attorney Stuart A. Smith (Mr. Smith) as a witness who may aid the Court in evaluating whether the Curtis Mallet opinion

was of such quality and character that Mr. Logan and Logan Trust I could reasonably rely on it in preparing their income tax returns.

By the motion in limine respondent asks us to exclude from evidence Mr. Smith's expert report and testimony on the alternative grounds that the report: (1) Pertains exclusively to Mr. Logan's partner-level defenses, an issue not properly before the Court, pursuant to the temporary regulation; (2) consists of legal conclusions; and (3) contains advocacy.

Respondent indicated, in respondent's response to Mr. Logan's motion for partial summary judgment, that respondent is asserting in this proceeding that Curtis Mallet was a promoter of the transactions in issue. Respondent asserts that no participating partner of Tigers Eye could reasonably rely on an opinion issued by a promoter and that the status of Curtis Mallet as a promoter of Tigers Eye should be determined in this partnership-level proceeding.

Following New Millennium Trading, LLC v. Commissioner, 131 T.C. ___ (2008) (upholding the validity and applicability of the temporary regulation), we will deny Mr. Logan's motion for partial summary judgment. Thus, should we sustain respondent's determinations in the FPAA that Tigers Eye or the Logan Trusts' transactions with Tigers Eye should be disregarded and that the accuracy-related penalties otherwise apply, Mr. Logan's partner-

level defenses to those penalties will not be assertable in this partnership-level proceeding.

We conclude that whether Curtis Mallet was a promoter of the transactions in issue is to be decided in this partnership-level proceeding. We also conclude that, if we should determine that Curtis Mallet was a promoter of the transactions at issue, reliance on the Curtis Mallet opinion would not be a defense to the penalties. Moreover, Mr. Logan's reliance on the advice of his personal advisers is a partner-level defense that is not assertable in this partnership-level proceeding. See New Millennium Trading, LLC v. Commissioner, supra. Similarly, if we should decide that Curtis Mallet was not a promoter, Mr. Logan's reliance on the Curtis Mallet opinion would be a partner-level defense not assertable in this proceeding.

Since there are unresolved issues whether reliance on and the reliability of the Curtis Mallet opinion are partner-level defenses, respondent's motion in limine cannot be granted on that ground. However, we will grant respondent's motion to exclude Mr. Smith's expert report and testimony because the report consists of legal discussion and argument.

An Afterword notes that TRA 1997, as implemented by the temporary regulation, has created problems of judicial administration in the case at hand and similar pending cases that will not be resolved by recently proposed regulations.

Background

The facts recited in this statement are based on the parties' first and second stipulations of fact and accompanying exhibits and on matters admitted in the pleadings or in the motion papers or set forth in affidavits submitted by the parties or in judicially noticed records of the Court. For the purpose of deciding these motions, we view the facts in the light most favorable to the nonmoving party; the facts recited have not been found to be true after a trial.

The case at hand is one of many Son-of-BOSS cases pending in this Court.[3] It is one of a subset of such cases of transactions promoted by Sentinel that used a limited liability company (treated as a partnership for income tax purposes) to enable an investor (Mr. Logan in the case at hand) to claim losses that substantially offset millions of dollars of long-term capital gain realized on the sale of a business interest.

Mr. Logan was a cofounder of Wood Logan Associates, Inc. (WLA), a wholesale marketing and sales organization that distributed variable annuities. WLA was wholly owned by Manufacturers Life Wood Logan (MLWL), a holding company. Until early 1999 Mr. Logan owned 53,690 shares of MLWL directly and

---

[3]"BOSS" is an acronym for "Bond and Option Sales Strategy", which the Commissioner regards as an abusive tax shelter. See Notice 2000-44, 2000-2 C.B. 255, 256; see also Kligfeld Holdings v. Commissioner, 128 T.C. 192 (2007).

240,000 shares of MLWL through a family limited partnership (SKL).  Mr. Logan, directly and through three grantor trusts, Logan Trust I and two other such trusts (collectively the Logan Trusts), held a more-than-99-percent interest in SKL.

In early 1999 Mr. Logan sold all the MLWL shares he owned, directly and indirectly, to a large Canadian life insurance company for $94 per share, resulting in proceeds of $22,560,000 to SKL and direct proceeds of $5,046,860 to Mr. Logan.  The shares of MLWL had an average basis in the hands of SKL and Mr. Logan of approximately $1 per share.  Mr. Logan reported total long-term capital gain of $27,438,537 on his and the Logan Trusts' sales of the MLWL shares.

During the taxable year ended December 31, 1999, Tigers Eye was a limited liability company organized under Delaware law, formed not earlier than September 21, 1999.  Sentinel was the tax matters partner of Tigers Eye.  Banque Safra, a nominee partner for Brazilian investors, obtained a 7.5-percent capital and profits interest in Tigers Eye for a cash contribution of $58,000, and New Vista, an entity owned by Sentinel and its legal adviser, obtained a 0.5-percent profits interest in Tigers Eye for a cash contribution of $3,000.

On October 1, 1999, each of the three Logan Trusts bought from and sold to American International Group (AIG) a pair of substantially similar options on the euro--an option to buy

€184,537,700 from AIG (the purchased option) and an option to sell €184,537,700 to AIG (the sold option).  The terms of the purchased options were identical to the terms of the sold options with respect to the number of euro, the exercise and expiration date (October 3, 2000), and counterparty (AIG).  The exercise prices and premiums of the purchased and sold options differed slightly as shown below:

| Option | Premium | Exercise Price per Euro | Euro | Gross Exercise Price |
|--------|---------|-------------------------|------|----------------------|
| Sold | $9,405,027 | $1.092 | €184,537,700 | $201,515,168.40 |
| Purchased | 9,500,030 | 1.091 | 184,537,700 | 201,330,630.70 |
| Net | 95,003 | | | 184,537.70 |

The $95,003 difference in the premiums payable on each pair of options amounted to 1 percent of the higher premium on the purchased option.  The difference in the exercise prices of the purchased and sold options amounted to one-tenth of 1 cent per euro; the $184,537.70 gross difference in the exercise prices of the purchased and sold options amounted to .0009155, or less than one-tenth of 1 percent of the higher exercise prices of the sold options.

Because AIG was the counterparty on both options, each of the Logan Trusts did not actually pay $9,500,030 of its own funds to AIG for the purchased option, nor did it receive $9,405,027 from AIG for the sold option.  Instead the Logan Trusts and AIG netted their respective payment obligations with respect to the

option premiums, and each Logan Trust paid the net $95,003 to AIG with respect to each pair of purchased and sold options.[4]

On or about October 9, 1999, in exchange for a partnership interest in Tigers Eye, each of the Logan Trusts contributed its purchased option and assigned its obligations under the sold option to Tigers Eye, along with $40,600 cash (a total of $121,800 for the three trusts). Tigers Eye recorded that each trust contributed $133,743 to capital (total $401,229).

On December 15, 1999, about 65 days after the Logan Trusts had contributed and assigned their interests and obligations in the options to Tigers Eye, Tigers Eye distributed to the Logan Trusts in liquidation of their partnership interests euro[5] and 10,419 shares of Xerox Corp., having a combined value of $229,992.42. In computing the net amounts the Logan Trusts were entitled to and did receive in liquidation of their interests in Tigers Eye, the obligations of Tigers Eye to deliver euro if AIG should exercise the sold options were netted and offset against the rights of Tigers Eye to demand and receive euro if it should exercise the purchased options. SKL received the 10,419 shares

_____

[4]This statement disregards other payments by or on behalf of Mr. Logan to AIG and others to enable the Logan Trusts to participate in the transactions at issue.

[5]Although the first stipulation of facts that has been lodged does not specify the exact number of euro distributed to the Logan Trusts, it appears that the dollar value of the distributed euro and their proceeds of sale realized on behalf of Mr. Logan before yearend 1999 amounted to less than $14,000.

of Xerox Corp. from the Logan Trusts and sold those shares on December 31, 1999, for $227,447.36.

The Batts Group LTD (The Batts Group), another partner in Tigers Eye unrelated to Mr. Logan, entered into and carried out transactions in a pair of euro options with AIG and Tigers Eye that were similar to the transactions of the Logan Trusts.

Curtis Mallet issued a 16-page opinion letter (the first letter) and 122-page legal memorandum, both dated March 31, 2000, to Mr Logan individually and as trustee of the Logan Trusts. Curtis Mallet issued a separate 10-page opinion letter, also dated March 31, 2000, on the subject of penalties, to Mr. Logan and the Trusts.  By fax, dated April 7, 2000, and letter, dated November 6, 2000, Curtis Mallet revised and supplemented the first letter and the legal memorandum.  In Mr. Logan's opposition to respondent's motion in limine, Mr. Logan's counsel asserts that Curtis Mallet provided the same analysis in two opinion letters and a 122-page memorandum to all Tigers Eye partners "who reported basis/'partnership item' and who face the 40 percent penalty".

Mr. Logan and the Logan Trusts claimed an aggregate basis in the Xerox Corp. shares of more than $27 million.  This resulted in a claimed aggregate loss on the sale of the shares of more than $26 million, which Mr. Logan reported on his 1999 Federal income tax return as short-term capital losses offsetting the

bulk of the long-term capital gains he reported on his same-year direct and indirect sales of MLWL stock.

Respondent timely sent Tigers Eye the FPAA in issue, comprising (1) Letter 1830, Notice of Final Partnership Administrative Adjustment, (2) Form 870-PT, Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts, including a Schedule of Adjustments, and (3) an exhibit A setting forth respondent's various determinations.  The schedule of adjustments adjusted to zero the following five items:

| | | |
|---|---|---|
| A. | Capital contributions (Sched. M-2, line 2) | $698,595 |
| B. | Distributions of property other than money (Sched. M-2, line 6b) | $365,446 |
| C. | Outside partnership basis | $24,500,059 |
| D. | Other deductions (Sched. K, line 11) | (11,314) |
| E. | Other income (loss) (Sched. K, line 7) | (242,186) |

Unlike items A, B, D, and E, each of which is identified as the adjustment of a line item on the Tigers Eye 1999 Form 1065, U.S. Partnership Return of Income, the item C amount (Outside partnership basis) does not appear on the partnership return, nor can we trace it to any entry on the Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., to the partners, and it does not tie into or relate to any item on the partnership

return of which we have been apprised.[6]  Items A and B are the sums of the net amounts of property initially contributed and later received as liquidating distributions by The Batts Group and the Logan Trusts.  It appears that the option premiums on the purchased (long) options were netted against the option premiums on the sold (short) options in arriving at the gross amounts shown on the 1999 partnership return as having been contributed by and distributed to The Batts Group and the Logan Trusts.

In exhibit A, respondent determined that:

1.  Neither Tigers Eye nor its purported partners established its existence as a partnership as a matter of fact;

2.  even if Tigers Eye existed as a partnership, it had no business purpose other than tax avoidance, lacked economic substance, and constitutes an economic sham for Federal income tax purposes, so that the partnership and the transactions are disregarded in full and any purported losses resulting from the transactions are not allowable as deductions and are not allowed for Federal income tax purposes;

3.  under section 1.701-2, Income Tax Regs., Tigers Eye was formed and availed of in connection with a transaction or transactions in taxable year 1999, a principal purpose of which

---

[6]In a supplement to respondent's response to Mr. Logan's motion, respondent asserts:  "All partnership items that feed into the Tigers Eye participants' outside bases in Tigers Eye are properly raised by this line item".

was to reduce the present value of its partners' aggregate Federal tax liability in a manner that is inconsistent with the intent of subchapter K of the Internal Revenue Code;

4. the purported partners of Tigers Eye did not enter into the option positions and Tigers Eye did not purchase the foreign currency or stock with a profit motive for purposes of section 165(c)(2);

5. even if the foreign currency options are treated as having been contributed to Tigers Eye, the amount treated as contributed by the partners under section 722 with respect to the purchased options is reduced by the amounts received by the contributing partners from the contemporaneous sales of the sold options to the same counterparty, thus reducing the basis of the contributed options in the hands of both Tigers Eye and the contributing partners so that any corresponding claimed increases in the outside bases in Tigers Eye resulting from the contributions of the sold options are disallowed;

6. the adjusted bases of the purchased options and other property purportedly contributed by the partners to Tigers Eye have not been established under section 723 so that the partners of Tigers Eye have not established adjusted bases in their respective partnership interests in an amount greater than zero;

7. in the case of a sale, exchange, or liquidation of Tigers Eye partners' partnership interests, neither the purported

partnership nor its purported partners have established that the bases of the partners' partnership interests were greater than zero for the purpose of determining gain or loss to such partners from the sale, exchange, or liquidation of the partnership interest;

8. accuracy-related penalties are determined at the partnership level and will be imposed at the partner level.

Sentinel, the tax matters partner, filed a petition during the time it was entitled to do so as a notice partner. See Barbados #6 Ltd. v. Commissioner, 85 T.C. 900, 903-905 (1985). Sentinel's petition assigned error to all of respondent's determinations set forth in the FPAA. Respondent's answer categorically denied all the assignments of error; by amendment to answer respondent advanced two additional theories, under section 465(b)(4) and section 1.988-2(f), Income Tax Regs.

The Court granted Mr. Logan, as trustee of Logan Trust I, leave to file a notice to participate in this proceeding. Banque Safra, as well as Sentinel, has no stake in the outcome of this proceeding. The Batts Group settled its case with the Internal Revenue Service (IRS) arising from the FPAA in the case at hand and also has no stake in the outcome.

Mr. Logan asserts that in reporting losses from the transactions at issue on his return, he relied on the advice of professionals, including two attorneys and a certified public

accountant, as well as the Curtis Mallet opinion. He wishes to raise his reliance on that advice as a defense to the application of accuracy-related penalties if we should sustain respondent's determinations in the FPAA that either Tigers Eye or the Logan Trusts' transactions with Tigers Eye should be disregarded so that the accuracy-related penalties would otherwise apply.

Mr. Logan submitted to the Court and served on Sentinel and respondent a notice of expert witness in which he identified Mr. Smith as a witness who may aid the Court in evaluating whether the Curtis Mallet opinion "is of the quality and character upon which the Logan Trust could reasonably rely in preparing its tax returns". A copy of "Petitioner's Expert Report of Stuart A. Smith" (the Smith report) was attached to Mr. Logan's notice. Mr. Logan would have the Smith report entered into evidence to support his claim that his reliance on the Curtis Mallet opinion was reasonable.

On May 20, 2008, the first stipulation of facts, with exhibits, was lodged with the Court. Included among those exhibits were Exhibits 125-J, 126-J, 127-J, 128-J, and 130-J, comprising copies of the Curtis Mallet opinion, as revised and supplemented, and the 122-page legal memorandum.

On September 26, 2008, the second stipulation of facts, with exhibits, was lodged with the Court. Included among those exhibits are copies of communications among representatives of

Sentinel and BDO Seidman and attorneys at Curtis Mallet that would indicate that Curtis Mallet played a role in the preparation of the forms of documents used to implement the transactions at issue. Mr. Logan asserts that he did not receive a copy of any such communications included among such exhibits before this litigation commenced.

Neither the first stipulation of facts nor the second stipulation of facts nor any document yet lodged or filed in this proceeding refers to or includes a copy of any retainer agreement between Mr. Logan and Curtis Mallet or to any Curtis Mallet opinion to The Batts Group nor to whether, when, and in what circumstances Tigers Eye disposed of its interests and obligations in the paired options contributed and assigned to Tigers Eye by the Logan Trusts.

<u>Discussion</u>

I.    <u>TEFRA Procedures and Partnership Items</u>

The unified partnership audit and litigation procedures set forth in sections 6221 through 6234 were originally enacted by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648. TEFRA provisions divide disputes arising from "partnership items"[7] from those

---

[7]Sec. 6231(a)(3) defines "partnership item" as:

with respect to a partnership, any item required to be taken into account for the partnership's taxable year
                                                    (continued...)

arising from "nonpartnership items".[8]  Maxwell v. Commissioner,
87 T.C. 783, 787 (1986) (citing section 6231(a)(3) and (4)).  If
the tax treatment of a partnership item is at issue, the statute
requires the matter to be resolved at the partnership level.
Sec. 6221; Maxwell v. Commissioner, supra at 787-788.

A.    Partnership Items

In a partnership-level proceeding the Court has jurisdiction
to determine "all partnership items of the partnership for the
partnership taxable year to which the notice of final partnership
administrative adjustment relates, the proper allocation of such
items among the partners, and the applicability of any penalty,
addition to tax, or additional amount which relates to an
adjustment to a partnership item."  Sec. 6226(f).  "While TEFRA
defines a 'partnership item' in technical terms, the provision
generally encompasses items 'more appropriately determined at the
partnership level than at the partner level'".  Weiner v. United
States, 389 F.3d 152, 154 (5th Cir. 2004) (quoting section
6231(a)(3)).  The determination of partnership items in a
partnership-level proceeding is binding on the partners and may

---

[7](...continued)
under any provision of subtitle A to the extent
regulations prescribed by the Secretary provide that,
for purposes of this subtitle, such item is more
appropriately determined at the partnership level than
at the partner level.

[8]Sec. 6231(a)(4) defines the term "nonpartnership item" as
"an item which is (or is treated as) not a partnership item."

not be challenged in a later partner-level proceeding.  Secs. 6230(c)(4), 7422(h).

B.   Affected Items

The term "affected item" means "any item to the extent such item is affected by a partnership item."  Sec. 6231(a)(5).  An affected item is by definition not a partnership item.  Dial USA, Inc. v. Commissioner, 95 T.C. 1, 5 (1990).  An affected item, rather than being universally applicable to every partner, is peculiar to a particular partner's tax position.  Maxwell v. Commissioner, supra at 790.

Affected items have two essential aspects.  The first involves a partnership issue and the second involves a nonpartnership issue; i.e., the partner's personal items. Partners must raise any partnership item that "affects" their personal items at the partnership-level proceeding.  See, e.g., GAF Corp. & Subs. v. Commissioner, 114 T.C. 519, 528 (2000); Dubin v. Commissioner, 99 T.C. 325, 328 (1992); Maxwell v. Commissioner, supra at 792-793.  If a partner does not pursue his rights in a partnership-level proceeding, he may not later seek a redetermination of partnership items as they relate to his affected item in a later partner-level proceeding.  See, e.g., GAF Corp. & Subs. v. Commissioner, supra at 526-527.

After the partnership-level proceeding is concluded and the partnership administrative adjustments have become final, the

Commissioner makes a "computational adjustment", a change in the tax liability of a partner that properly reflects the treatment of a partnership item. See sec. 6231(a)(6). If a computational adjustment results in a deficiency in a partner's tax stemming from an affected item that requires a factual determination at the partner level, the normal deficiency procedures outlined in sections 6212 and 6213 apply. Sec. 6230(a); sec. 301.6231(a)(6)-1T(a)(2), Temporary Proceed. & Admin. Regs., 64 Fed. Reg. 3840 (Jan. 26, 1999).[9] On the other hand, if the computational adjustment of a partner's tax liability can be made without making any additional partner-level determinations, the Commissioner may directly assess the change without issuing a notice of deficiency. Sec. 6231(a)(6), (c); N.C.F. Energy Partners v. Commissioner, 89 T.C. 741, 744 (1987); sec. 301.6231(a)(6)-1T(a)(1), Temporary Proceed. & Admin. Regs., 64 Fed. Reg. 3840 (Jan. 26, 1999). If the partner believes that the computational adjustment was erroneous, he may file a claim for refund after payment, sec. 6230(c), and, upon its denial, sue for the refund in a District Court or the Court of Federal Claims.

C.   Penalties and Defenses to Penalties

Any penalty, addition to tax, or additional amount (collectively penalty) related to adjustments stemming from an

---

[9]With the exception of penalties. See infra pt. C. immediately following.

adjustment to partnership items has generally been treated as an affected item that often requires a factual determination at the partner level. See N.C.F. Energy Partners v. Commissioner, supra at 744; sec. 301.6231(a)(5)-1T(d), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, 1987). Before Congress enacted TRA 1997 the Court did not have jurisdiction in a partnership-level proceeding to decide the applicability of partnership-item penalties.[10] See N.C.F. Energy Partners v. Commissioner, supra; Crystal Beach Dev. of Destin Ltd. v. Commissioner, T.C. Memo. 2000-170. Rather, partnership-item penalties were determined at the partner level as affected items in a deficiency proceeding after the related partnership-level proceeding had been completed.

TRA 1997 section 1238(a) amended section 6221 to provide that "the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership

---

[10]The Taxpayer Relief Act of 1997 (TRA 1997), Pub. L. 105-34, sec. 1238, 111 Stat. 1026, amended the partnership procedures regarding penalties by (1) amending sec. 6221 to require the applicability of any partnership-item penalty to be determined at the partnership level, (2) amending sec. 6230(a)(2)(A)(i) to exclude partnership-item penalties from the deficiency proceeding, and (3) amending sec. 6230(c)(4) making conclusive the partnership level determination regarding the applicability of any partnership-item penalty but allowing the partner to assert in a refund claim any "partner-level" defenses.

item" be determined at the partnership level.[11]  Although the applicability of a penalty usually requires consideration of any defenses to the penalty, section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3838 (Jan. 26, 1999), prohibits "partner level defenses" to any partnership-item penalty from being litigated in the partnership-level proceeding and allows such a penalty attributable to the treatment of partnership items to be assessed as a computational adjustment irrespective of whether partner-level determinations are required.  A partner who wishes to assert a partner-level defense to such a penalty must do so in a separate refund action following assessment and payment.  Sec. 6230(c); sec. 301.6221-1T(d), Temporary Proced. & Admin. Regs., <u>supra</u>.[12]  Although

---

[11]In its report underlying the amendments, the House Committee on Ways and Means explained that it had proposed the amendment because:

> Many penalties are based upon the conduct of the taxpayer.  With respect to partnerships, the relevant conduct often occurs at the partnership level.  In addition, applying penalties at the partner level through the deficiency procedures following the conclusion of the unified proceeding at the partnership level increases the administrative burden on the IRS and can significantly increase the Tax Court's inventory. [H. Rept. 105-148, at 594 (1997), 1997-4 C.B. (Vol. 1) 319, 916.]

[12]The temporary regulation is consistent with the legislative history.  The House committee report explained that the proposed amendment "provides that the partnership-level proceeding is to include a determination of the applicability of penalties at the partnership level.  However, the provision

(continued...)

partner-level defenses may be raised only in a refund action, defenses to any penalty that are not partner-level defenses must be determined in the partnership-level proceeding.  See, e.g., Klamath Strategic Inv. Fund, LLC v. United States, ____ F.3d ___, ____ (5th Cir., May 15, 2009) (slip op. at 14-16) (considering reasonable cause and good faith defenses at partnership level by looking to actions of managing member), affg. in part, vacating in part, and remanding 472 F. Supp. 2d 885, 902-904 (E.D. Tex. 2007); Whitehouse Hotel Ltd. Pship. v. Commissioner, 131 T.C. ___ (2008) (reasonable cause exception for qualified appraisal in section 6664(c)(1) is a partnership-level defense); Santa Monica Pictures, LLC v. Commissioner, T.C. Memo. 2005-104 (looking to actions of partnership through managing member in considering partnership's reasonable cause and good faith defenses); Stobie Creek Invs., LLC v. United States, 82 Fed. Cl. 636 (2008) (partnership-level reasonable cause defense to any of the penalties under section 6664(c)); Jade Trading, LLC v. United States, 80 Fed. Cl. 11, 60 (2005) (partnership's reasonable cause defenses were not raised and, therefore, were not considered by the court); Long Term Capital Holdings v. United States, 330 F. Supp. 2d 122, 205-212 (D. Conn. 2004) (considering partnership's

_____

[12](...continued)
allows partners to raise any partner-level defenses in a refund forum."  H. Rept. 105-148, at 594 (1997), 1997-4 C.B. (Vol. 1) 319, 916.

reasonable cause and good faith defenses at partnership level by looking to actions of general partner), affd. 150 Fed. Appx. 40 (2d Cir. 2005); see also sec. 301.6221-1T(c), Temporary Proced. & Admin. Regs., supra (partnership-level determinations include all legal and factual determinations underlying the determination of partnership-level penalties, including partnership-level defenses but not partner-level defenses).

    D.    Exceptions to Application of TEFRA Procedures

For completeness and to prepare for concluding observations in the Afterword about problems of judicial administration created by TRA 1997 and the temporary regulation, we note two circumstances under section 6231 in which what would have otherwise been partnership items may be treated as nonpartnership items. In these circumstances, application of the TEFRA procedures may be avoided so that the traditional deficiency and assessment procedures will apply to both deficiencies and penalties.

Under section 6231(a)(1)(B), there is an exception for small partnerships (having fewer than 10 partners, each of whom is a U.S. resident individual, C corporation, or estate of a decedent partner). Although Tigers Eye had fewer than 10 partners, it was purportedly owned by a number of passthrough entities, and so it did not qualify for the exception and remained subject to TEFRA. See Primco Mgmt. Co. v. Commissioner, T.C. Memo. 1997-332; Rev.

Rul. 2004-88, 2004-2 C.B. 165.  Son-of-BOSS partnerships with fewer than 10 partners, for the most part, but not invariably, see New Phoenix Sunrise Corp. & Subs. v. Commissioner, 132 T.C. ____ (2009), do not qualify for the small partnership exception because individuals participating in the transaction use disqualified entities such as grantor trusts and LLCs to hold their interests and other disqualified persons such as foreign individuals or entities are partners.  As we observed in New Phoenix Sunrise Corp. & Subs. v. Commissioner, supra at ___ n.3 (slip op. at 20) (quoting Wadsworth v. Commissioner, T.C. Memo. 2007-46), "'The small partnership exception permits this Court to review in a deficiency suit items that otherwise would be subject to partnership-level proceedings'".

Under section 6231(c) the Secretary is authorized to promulgate regulations with respect to special enforcement areas. Partnership items may be treated as nonpartnership items under section 6231(c) if by such regulations the Secretary determines and provides that to treat such items as partnership items will interfere with the effective and efficient enforcement of the revenue laws.  Special enforcement areas mentioned in section 6231(c)(1) include (A) termination and jeopardy assessments, (B) criminal investigations, (C) indirect methods of proof of income, (D) foreign partnerships, and (E) "other areas that the Secretary determines by regulation".  Among such areas that have been

designated by regulation, in addition to those specified in section 6231(c)(1),[13] are bankruptcy and receivership, sec. 301.6231(c)-7, Proced. & Admin. Regs., and requests for prompt assessment, sec. 301.6231(c)-8, Proced. & Admin. Regs.

The following comment appears in 1 McKee et al., Federal Taxation of Partners and Partnerships, par. 10.02[4], at 10-16 (4th ed. 2007):

> Converting partnership items to nonpartnership items may have the salutary effect of freeing the Service and the partnership from the potentially cumbersome procedures of the partnership audit rules in appropriate cases. * * *

On February 12, 2009, the Secretary proposed regulations that would determine that treating items related to listed transactions within the meaning of section 1.6011-4(b)(2), Income Tax Regs., as partnership items "interferes with the effective and efficient enforcement of the internal revenue laws". Notice of proposed rule making, 74 Fed. Reg. 7206 (Feb. 13, 2009). In Notice 2000-44, supra, 2000-2 C.B. at 256, the IRS had announced that Son-of-BOSS transactions using the paired-option partnership contribution/disposition arrangement are "listed transactions". However, the proposed regulations would not become effective until adopted as final regulations, applicable to partner taxable years ending on or after the date of publication of the proposed

---

[13]No such designation has been made by regulation with respect to foreign partnerships.

regulations in the Federal Register.  Sec. 301.6231(c)-9(c),
Proposed Proced. & Admin. Regs., 74 Fed. Reg. 7208 (Feb. 13,
2009).  Under the proposed regulations, as under the current
regulations related to designated enforcement areas, the
conversion of partnership items to nonpartnership items would
occur only if the Commissioner sent a written notice to that
effect to a partner before issuing an FPAA.  A hearing was set
for June 4, 2009, and comments were requested by May 14.
However, the hearing has been canceled because no requests to
speak on the proposal have been received, see 74 Fed. Reg. 25177
(May 27, 2009), and only one comment has been received, see 99
DTR G-5 (May 27, 2009).

II.  Petitioner's Motion To Invalidate Temporary Regulation

We now turn to Mr. Logan's motion for partial summary
judgment that section 301.6221-1T(c) and (d), Temporary Proced. &
Admin. Regs., supra, is invalid because it would prevent him from
interposing his partner-level defenses to accuracy-related
penalties in this partnership-level proceeding.

The issue is important.  It not only has implications for
taxpayer rights; it has practical consequences for judicial
administration generally and the conduct of the trial in the case
at hand, and also--as we shall see--for resolution of
respondent's motion in limine.

Mr. Logan's counsel represented the taxpayer in <u>Jade Trading, LLC v. United States</u>, 80 Fed. Cl. 11 (2007) on appeal (Fed. Cir., Feb. 25, 2008),[14] another Son-of-BOSS case of transactions promoted by Sentinel that appears to follow the same format as <u>New Millennium Trading, LLC v. Commissioner</u>, 131 T.C. __ (2008), and the case at hand. In <u>Jade Trading</u>, there was a 3-week trial that was devoted in large part to the introduction of evidence of the participating partners' alleged due diligence and good faith reliance on financial and tax advisers.

In <u>Jade Trading</u>, Judge Williams first held, on the merits, that the paired-option transactions lacked economic reality, notwithstanding her view, under <u>Helmer v. Commissioner</u>, T.C. Memo. 1975-160, and its offspring, that the obligations to satisfy the sold call options assigned to and assumed by the

---

[14]In <u>Evergreen Trading, LLC v. United States</u>, Fed. Cl. No. 06-123T, involving another Sentinel-promoted Son-of-BOSS partnership, Judge Allegra, in an order dated Sept. 23, 2008, has stayed all further proceedings pending final resolution on appeal of <u>Jade Trading, LLC v. United States</u>, 80 Fed. Cl. 11 (2007). Previously, Judge Allegra had issued <u>Evergreen Trading, LLC v. United States</u>, 80 Fed. Cl. 122 (2007), a detailed and comprehensive opinion (21 single-spaced pages and 20-page appendix), granting in part and denying in part the Government's motion to compel production of more than 140 documents that plaintiff had withheld from discovery. See also <u>Nussdorf v. Commissioner</u>, 129 T.C. 30 (2007).

partnership would not be considered liabilities under section 752.[15]

Second, Judge Williams determined that the partnership-level elements for the application of the 40-percent gross valuation misstatement penalty and other accuracy-related penalties had all been satisfied because the transaction was an abusive tax shelter. In Jade Trading, LLC v. United States, 81 Fed. Cl. 173, 176 (2008), denying Sentinel's motion for reconsideration, Judge Williams stated that the penalties that the Court had determined clearly related to

> the inflated basis [that] the spread transaction in the partnership generated on the * * * [partners'] individual returns * * *
>
> * * * it was only the construct of forming the partnership and contributing the spread to the partnership that permitted the tax losses to be realized. Had the * * * [partners] simply done the spread transactions on their own without contributing them to * * * [the partnership] there would have been no substantial losses. As the Court recognized: "packaging the investment in the partnership vehicle was an absolute necessity for securing the tax benefits." Jade [Trading], 80 Fed. Cl. at 14. [Emphasis supplied.]

Third, Judge Williams upheld the validity of the temporary regulation. Notwithstanding that a substantial part of the Jade Trading trial had been devoted to the introduction of evidence to support the participating partners' defenses to the penalties, Judge Williams held that the temporary regulation was valid and prevented the Court from considering those defenses. As a

---

[15]See supra note 2.

result, if Jade Trading should be affirmed on the pending appeal to the Court of Appeals for the Federal Circuit, the Commissioner will be able to assess by computational adjustments not only the deficiencies (only some part of which has already been paid) but also the 40-percent penalties, and the participating partners will be required to file claims and suits for refund in order to obtain judicial review of their partner-level defenses/claims for refund of the penalties.  To similar effect is Stobie Creek Invs., LLC v. United States, 82 Fed. Cl. 636 (2008) (Court of Federal Claims held partnership, through its managing partner, did not act with reasonable cause and good faith in regard to tax underpayment so as to preclude accuracy-related penalties) on appeal (Fed. Cir., Sept. 29, 2008).  But compare Klamath Strategic Inv. Fund, LLC v. United States, ___ F.3d at ___-___ (slip op. at 21-23) (Court of Appeals affirmed District Court's holding that penalties did not apply because managers of partnership reasonably relied on advice of professionals, but reversed District Court's ordering a refund because District Court did not have jurisdiction to grant refund in partnership-level proceeding).

In New Millennium Trading, LLC v. Commissioner, supra, this Court, on the participating-partner-tax-matters-partner's motion for partial summary judgment, has held that the temporary regulation is valid and applicable to prevent the participating partner from interposing his partner-level defenses in the

partnership-level proceeding if the Court should sustain the Commissioner's FPAA determinations that the partnership or the participating partner's transactions with the partnership should be disregarded. We are bound to follow New Millennium Trading; we shall therefore deny Mr. Logan's motion for partial summary judgment.

III. Respondent's Motion in Limine

Mr. Logan asserts that he and the Logan Trusts reasonably relied on the Curtis Mallet opinion in taking their return positions that (1) their obligations under the sold options did not reduce the bases of their partnership interests in Tigers Eye and (2) in the liquidation of their partnership interests they received high-basis assets whose sales created capital losses that offset the long-term capital gains Mr. Logan realized earlier in 1999 on the sales of MLWL shares.

A. Reasonable Cause Defense to Accuracy-Related Penalties

Section 6664(c)(1) provides a reasonable cause defense to application of accuracy-related penalties. Pursuant to section 6664(c)(1), the accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if the taxpayer shows that there was reasonable cause for, and that he acted in good faith with respect to, such portion. See Higbee v. Commissioner, 116 T.C. 438, 448-449 (2001); sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent

facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.
"Generally, the most important factor is the extent of the
taxpayer's effort to assess the taxpayer's proper tax liability.
Circumstances that may indicate reasonable cause and good faith
include * * * the experience, knowledge, and education of the
taxpayer."  Id.

Under some circumstances, a taxpayer may avoid liability for
the accuracy-related penalty by showing reasonable reliance on a
competent professional adviser.  See United States v. Boyle, 469
U.S. 241, 250-251 (1985); Freytag v. Commissioner, 89 T.C. 849,
888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S.
868 (1991).  For reliance on professional advice to excuse a
taxpayer from negligence, the taxpayer must show that the
professional had the requisite expertise, as well as knowledge of
the pertinent facts, to provide informed advice on the subject
matter.  See David v. Commissioner, 43 F.3d 788, 789-790 (2d Cir.
1995), affg. T.C. Memo. 1993-621; Freytag v. Commissioner, supra
at 888.  The validity of the reliance turns on "the quality and
objectivity of professional advice which they obtained".  Swayze
v. United States, 785 F.2d 715, 719 (9th Cir. 1986).

"In order for reliance on professional tax advice to be
reasonable, however, the advice must generally be from a
competent and independent advisor unburdened with a conflict of
interest and not from promoters of the investment."  Mortensen v.
Commissioner, 440 F.3d 375, 387 (6th Cir. 2006), affg. T.C. Memo.

2004-279. Courts have routinely held that taxpayers could not reasonably rely on the advice of promoters or other advisers with an inherent conflict of interest such as one who financially benefits from the transaction. See, e.g., Goldman v. Commissioner, 39 F.3d 402, 408 (2d Cir. 1994) (taxpayer could not reasonably rely on professional advice of someone known to be burdened with an inherent conflict of interest--a sales representative of transaction), affg. T.C. Memo. 1993-480; Pasternak v. Commissioner, 990 F.2d 893, 903 (6th Cir. 1993) (reliance on promoters or their agents is unreasonable because such persons are not independent of the investment), affg. T.C. Memo. 1991-181; Illes v. Commissioner, 982 F.2d 163, 166 (6th Cir. 1992) (finding negligence where taxpayer relied on person with financial interest in the venture), affg. T.C. Memo. 1991-449; see also Hansen v. Commissioner, 471 F.3d 1021, 1031 (9th Cir. 2006) ("a taxpayer cannot negate the negligence penalty through reliance on a transaction's promoters or on other advisors who have a conflict of interest"), affg. T.C. Memo. 2004-269; Van Scoten v. Commissioner, 439 F.3d 1243, 1253 (10th Cir. 2006) ("To be reasonable, the professional adviser cannot be directly affiliated with the promoter; instead, he must be more independent"), affg. T.C. Memo. 2004-275; Barlow v. Commissioner, 301 F.3d 714, 723 (6th Cir. 2002) (noting "that courts have found that a taxpayer is negligent if he puts his faith in a scheme that, on its face, offers improbably high tax advantages, without

obtaining an objective, independent opinion on its validity"),
affg. T.C. Memo. 2000-339.  A promoter's self-interest makes such
"advice" inherently unreliable.

B.    Respondent's Position in Motion in Limine

Mr. Logan identified Mr. Smith as a witness whose testimony
and expert report might aid the Court in evaluating whether the
Curtis Mallet opinion "is of the quality and character upon which
the Logan Trust could reasonably rely in preparing its tax
returns".  Respondent filed respondent's motion in limine to
exclude the Smith report and filed a supplement to the motion.

Respondent advances two alternative grounds for excluding
the Smith report from evidence in its entirety:  (1) The Smith
report relates solely to Mr. Logan's partner-level defenses that
cannot not be raised in this partnership-level proceeding under
section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs.,
supra; and (2) the Smith report expresses legal conclusions.  If
we should reject both alternatives, respondent asserts that
portions of the Smith report should be excluded because they
constitute advocacy.[16]

---

[16]With respect to respondent's argument about advocacy, we
observe that Mr. Smith successfully represented the plaintiffs in
a partner-level proceeding, Allison v. United States, 80 Fed. Cl.
568 (2008), in establishing their rights to refunds of negligence
penalties assessed against them because of deductions and credits
they claimed from their participation in a plastics recycling
partnership that had been determined in a partnership-level
proceeding to be an abusive tax shelter.

Respondent has also taken the position that Curtis Mallet was a promoter of the transactions in issue and that the status of Curtis Mallet as a promoter of Tigers Eye should be determined in this partnership-level proceeding.[17]  Mr. Logan filed an opposition to respondent's motion in limine, and respondent filed a reply to the opposition by Mr. Logan to respondent's motion in limine as supplemented.

There seems to be incongruity between respondent's position that Mr. Logan's alleged reliance on the Curtis Mallet opinion is a partner-level defense over which we lack jurisdiction in this partnership-level proceeding and respondent's assertion that in this same proceeding we should determine that Curtis Mallet was one of the promoters of the transactions in issue on whose opinion Mr. Logan was not entitled to rely.  We therefore consider whether we have jurisdiction in this partnership-level proceeding to decide whether Curtis Mallet was a promoter because it relates to the issue of raising defenses to partnership-item penalties in this proceeding.

---

[17]Respondent served notice (in n.7 of respondent's response to Mr. Logan's motion for partial summary judgment to declare the temporary regulation invalid) that respondent asserts that (1) Curtis Mallet was one of the promoters of the transactions in issue, (2) as a matter of law, citing sec. 6664(d), a partner cannot reasonably rely on the opinion issued by a promoter, and (3) we should address the status of Curtis Mallet as a promoter in this partnership-level proceeding.

C.   Status as Promoter of Partnership Determined in
     Partnership-Level Proceeding

In the FPAA respondent determined, inter alia, that Tigers
Eye should be disregarded for Federal income tax purposes because
it "had no business purpose other than tax avoidance, lacked
economic substance, and constitutes an economic sham for Federal
income tax purposes".  A "partnership item" includes "the legal
and factual determinations that underlie the determination of the
amount, timing, and characterization of items of income, credit,
gain, loss, deduction, etc."   Sec. 301.6231(a)(3)-1(b), Proced.
& Admin. Regs.   Among such determinations are whether partnership
activities have been engaged in with the intent to make a profit
for purposes of section 183.  Id.[18]  The characterization of a
partnership as a sham or as lacking economic substance is a legal
determination that directly bears on the amount and
characterization of items of income, credit, gain, loss,
deduction, etc. and falls within the definition of partnership
item.  Petaluma FX Partners, LLC v. Commissioner, 131 T.C. __
(2008); see also RJT Invs. X v. Commissioner, 491 F.3d 732, 737
(8th Cir. 2007).

_____

[18]We also note that par. 4 of exhibit A to the FPAA asserts
that the "purported partners of Tigers Eye did not enter into the
option positions and Tigers Eye did not purchase the foreign
currency or stock with a profit motive for purposes of section
165(c)(2)".  Notice 2000-44, 2000-2 C.B. 255, 255, cites Fox v.
Commissioner, 82 T.C. 1001 (1984), for the proposition that "in
the case of individuals, these [paired-option] transactions may
be subject to challenge under § 165(c)(2)".

To prove that Tigers Eye engaged in the transactions at issue for profit, Sentinel and participating partner must show that the activity was undertaken with an actual and honest objective of making a profit. While a reasonable expectation of profit is not required, there must be a bona fide objective of making an economic profit, independent of tax savings. Taube v. Commissioner, 88 T.C. 464, 478-479 (1987) (and cases cited thereat); Beck v. Commissioner, 85 T.C. 557, 569-570 (1985) (and cases cited thereat).

The analysis of profit objective must be made at the partnership level. Klamath Strategic Inv. Fund, LLC v. United States, ___ F.3d at ___ (slip op. at 19); Polakof v. Commissioner, 820 F.2d 321, 323 (9th Cir. 1987), affg. T.C. Memo. 1985-197; Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Brannen v. Commissioner, 78 T.C. 471, 502-505 (1982), affd. 722 F.2d 695 (11th Cir. 1984). The proper focus is on the activities and intent of the general managers and promoters who effectively organize and operate the partnership. Klamath Strategic Inv. Fund, LLC v. United States, supra at ___ (slip op. at 19) (citing Agro Science Co. v. Commissioner, 934 F.2d 573, 576 (5th Cir. 1991), affg. T.C. Memo. 1989-687); Surloff v. Commissioner, 81 T.C. 210, 233 (1983); Kelley v. Commissioner, T.C. Memo. 1993-495. In determining whether the partnership engaged in the activity for profit, we must take into account all of the facts and circumstances with respect to the activity. Some courts have

held that evidence concerning other investor transactions involving the same tax shelter product or program is relevant. See, e.g., Sochin v. Commissioner, 843 F.2d 351, 355 & n.8 (9th Cir. 1988) (and cases cited at n.8), affg. Brown v. Commissioner, 85 T.C. 968 (1985); Jade Trading, LLC v. United States, 65 Fed. Cl. 188, 191-192 (2005).  "A consideration of the entire investment program directly relates to the analysis of Taxpayers probable economic benefits."  Sochin v. Commissioner, supra at 355.

Mr. Logan's counsel states in the opposition to respondent's motion in limine that the universe of partners in Tigers Eye who face the accuracy-related penalties received two opinions and a 122-page memorandum of law from Curtis Mallet and that

> While it is absolutely true that Mr. Smith states his analysis in terms of whether the Curtis Mallet opinion was of the type on which Mr. Logan could reasonably rely, that reality is true for the universe of those partners who reported the basis/"partnership item" and who face the 40 percent penalty asserted by the FPAA because they all received the same type of analysis from Curtis Mallet.  [Emphasis added.]

It appears to the Court that Curtis Mallet may have provided substantially identical tax opinions to investors in other Sentinel-promoted Son-of-BOSS transactions and that, like Mr. Logan, each investor was required to pay $100,000 to obtain a Curtis Mallet opinion.  See, e.g., Jade Trading, LLC v. United States, 80 Fed. Cl. at 14 n.3.[19]  The Government is also arguing

_____

[19]See also Carlisle v. Curtis, Mallet-Prevost, Colt & Mosle, LLP, 521 F.3d 597, 599 (6th Cir. 2008) (plaintiffs, who
(continued...)

on the appeal of <u>Jade Trading</u> that there is evidence in the record of that case that Mr. Bricker (the Curtis Mallet partner responsible for the opinion therein and the subject opinion in the case at hand) understood that prospective clients would retain Curtis Mallet only if it rendered a favorable tax opinion. There are also indications in the Exhibits to the Second Stipulation of Facts that has been lodged with the Court that Curtis Mallet attorneys may have played a role in preparing the forms of documents that were used to implement the transactions in issue in this and other cases.

Whether Curtis Mallet was a promoter of the transactions at issue such that no investor could reasonably rely on the Curtis Mallet opinion requires factual findings properly determined in a partnership-level proceeding, similar to factual findings necessary to determine that a partner has no basis in his partnership interest because the partnership is a sham or lacks economic substance.  See <u>Petaluma FX Partners, LLC v. Commissioner</u>, 131 T.C. ___(2008).

If, as respondent contends, Curtis Mallet was a promoter of Tigers Eye, our focus in deciding whether Tigers Eye engaged in the activities for profit must include the activities and intent of Curtis Mallet.  Whether Curtis Mallet was a promoter is a

---

[19](...continued)
participated in a tax shelter promoted by Arthur Andersen LLP and others, had signed individual retainer agreements with Curtis Mallet for a fee of $100,000 each), revd. and remanded sub nom. <u>Arthur Andersen LLP v. Carlisle</u>, 556 U.S. ___, 77 U.S.L.W. 4474 (May 4, 2009).

partnership-level issue to be determined in this proceeding as part of our review of the issues raised by the FPAA concerning the creation and operation of the partnership and the means and manner by which it and participating interests in it were created and sold. Therefore the Curtis Mallet opinion, and the circumstances in which it was arranged and provided for, prepared and produced, and obtained, received, and paid for by Mr. Logan, are properly the subject of evidence in this proceeding.[20]

Although respondent has taken the position that Curtis Mallet was a promoter of the transactions at issue, respondent asserts that Mr. Logan's claim that he and the Logan Trusts reasonably relied on the Curtis Mallet opinion is a partner-level defense that cannot be raised in this partnership-level proceeding under the temporary regulation. Respondent asserts that the Smith report relates solely to Mr. Logan's partner-level defenses and asks the Court to exclude the Smith report from evidence in this partnership-level proceeding. We disagree; the

---

[20]In this regard, any similar evidence of Curtis Mallet opinions to The Batts Group and to participating partners in other Sentinel-promoted Son-of-BOSS transactions would be relevant to establishing a pattern of activity of Curtis Mallet in concert with Sentinel and any other alleged promoter or promoters that would tend to support respondent's contention that Curtis Mallet acted as a promoter in the case at hand. See, e.g., Sochin v. Commissioner, 843 F.2d 351, 355 (9th Cir. 1988) (Tax Court properly admitted evidence of transactions of other investors in the promoter's program who were not before the Court as relevant to the sham determination), affg. Brown v. Commissioner, 85 T.C. 968 (1985).

analysis that follows shows that the definition of partner-level defense in the temporary regulation does not necessarily encompass Mr. Logan's and the Logan Trusts' reliance on the Curtis Mallet opinion.

D. <u>Tax Court's Jurisdiction To Decide Defenses to Applicability of Penalty That Are Not Partner-Level Defenses Defined by Temporary Regulation</u>

Section 6226(f), as amended by TRA 1997 section 1238(b), 111 Stat. 1026, gives this Court jurisdiction to decide the applicability of any partnership-item penalty, and generally, the applicability of a penalty depends on the absence or existence of a valid defense to its application. Section 6226(f) neither specifically permits nor prohibits the Court's consideration of the partnership's or partners' defenses to partnership-item penalties in the partnership-level proceeding. However, the temporary regulation prohibits partner-level defenses to any partnership-item penalty from being asserted in the partnership-level proceeding but allows them to be asserted in a separate refund proceeding as permitted in section 6230(c)(4). Although section 6230(c)(1) and (4) and the temporary regulation make clear that partner-level defenses cannot be decided at the partnership level, by implication all other defenses may be determined at the partnership level.

The temporary regulation specifically limits partner-level defenses to those defenses "that are personal to the partner or

are dependent upon the partner's separate return, and cannot be determined at the partnership level." Sec. 301.6221-1T(d), Temporary Proced. & Admin. Regs., supra. Examples of partner-level defenses include "whether any applicable threshold underpayment of tax has been met with respect to the partner or whether the partner has met the criteria of section 6664(b) (penalties applicable only where return is filed), or section 6664(c)(1) (reasonable cause exception)". Id.

A defense based on the reasonable cause exception under section 6664(c)(1), including reasonable reliance on the opinion of a professional, may be raised in a partnership-level proceeding if it is not a partner-level defense. See, e.g., Santa Monica Pictures, LLC v. Commissioner, T.C. Memo. 2005-104 (Court considered substantial authority standard as defense to application of understatement penalty, reasonable reliance by tax matters partner on opinion of a professional, and reasonable cause exception). Respondent has taken the position that, in deciding whether the section 6664(c)(1) reasonable cause defense applies, the Court may consider only whether the partnership had reasonable cause. That position, however, is more restrictive and gives a broader definition to partner-level defenses than the temporary regulation.

E.    Partner-Level Defense: Definition

In section 6231(a)(3) Congress vested the Secretary with authority to ascertain which items are more appropriately

determined at the partnership level than at the partner level. See <u>RJT Invs. X v. Commissioner</u>, 491 F.3d at 738 n.8 ("Congress vested in the Secretary of the Treasury, not in the federal courts, the authority to weigh and decide what items are most suitably ascertained at the partnership level").  In the temporary regulation the Secretary has determined that the only defenses that are not suitably ascertainable at the partnership level are defenses that are "personal to the partner or are dependant upon the partner's separate return and cannot be determined at the partnership level."  Sec. 301.6221-1T(d), Temporary Proced. & Admin. Regs., <u>supra</u>.  All defenses that are neither personal to the partner nor dependent on the partner's separate return are suitably ascertainable at the partnership level.  In a partnership-level proceeding, the Court has jurisdiction to decide the applicability of a penalty including any defenses to the penalty that are <u>suitably determined at the partnership level</u>; i.e., all defenses that are neither personal to the partner nor dependent upon the partner's separate return and can be determined at the partnership level.

Mr. Logan's and the Logan Trusts' reasonable cause defense to partnership-item penalties, their reliance on the Curtis Mallet opinion, is not a partner-level defense if it is personal neither to Mr. Logan nor to the Logan Trusts, does not depend on their separate returns, and can be determined at the partnership level.

### 1.  Personal to the Partner

The term "personal" is defined as "1: of or relating to a particular person:  affecting one individual or each of many individuals:  peculiar or proper to private concerns:  not public or general * * * 6: exclusively for a given individual".  Webster's Third New International Dictionary 1686 (2002).  In the context of a partnership, a defense is personal to a partner when it relates exclusively to that partner and requires the Court to consider facts that are unique to that partner.

Partner-level defenses include only those defenses that are personal or unique to a particular partner; i.e., only those defenses that require factual findings that are generally unrelated to the promotion of the transaction or formation of the partnership that would be relevant to all partners--factual findings unique to the relationship between a particular partner and the adviser on whose advice he claims to rely.  Partnership-level defenses are not limited to defenses of the partnership.  Rather they include all defenses that require factual findings that are generally relevant to all partners or a class of partners and not unique to any particular partner.

There are situations, as in this case, where the participating partner asserts reasonable reliance on materials and opinions provided to all participating partners (as well as investors in other partnerships promoted by the same persons) by persons who may have been promoters of the transaction.  Reliance

on such opinions would not be personal to a particular partner.

The determination of whether a taxpayer acted with reasonable cause and in good faith with respect to an underpayment that is related to a partnership item is made on the basis of all pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  "Circumstances that may indicate reasonable cause and good faith include * * * the experience, knowledge, and education of the taxpayer."  Id.  "In order for reliance on professional tax advice to be reasonable, however, the advice must generally be from a competent and independent advisor unburdened with a conflict of interest and not from promoters of the investment."  Mortensen v. Commissioner, 440 F.3d at 387.  Taxpayers cannot reasonably rely on the advice of promoters or other advisers with an inherent conflict of interest such as one who financially benefits from the transaction.  See, e.g., Goldman v. Commissioner, 39 F.3d at 408.  A promoter's self-interest makes such "advice" inherently unreliable.

If a partner's defense is reliance on expert or legal advice from an adviser who is unrelated to, and has no interest in, the transaction, that defense requires factual findings unique to the relationship between that partner and that adviser, and the Court has no jurisdiction in a partnership-level proceeding to decide the applicability of the defense.  On the other hand, if a partner's defense is reliance on advice from an adviser who

participated in structuring the transaction or is otherwise related to, has an interest in, or profits from the transaction, i.e., is considered a "promoter" of the transaction, that defense requires factual findings that would be generally relevant to all similarly situated partners and not unique to that particular partner.  A defense that relates to all such partners and is an integral part of the investment program is not personal to a particular partner.  The Court has jurisdiction in a partnership-level proceeding to decide the applicability of that defense.

## 2.    Depends on Partner's Separate Return

A defense to a partnership-item penalty is a partner-level defense if it depends on the partner's separate return.  A defense depends on the partner's separate return if relevant facts can be established only by examination of or reference to the partner's separate return.  An example of a defense that depends on the partner's separate return is the adequate disclosure exception to the accuracy-related penalty for a substantial understatement of income tax under section 6662(d)(2)(B).[21]  Deciding whether the relevant facts affecting

---

[21]Generally, there is a substantial understatement of income tax for any taxable year if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $5,000 ($10,000 in the case of a corporation other than an S corporation or a personal holding company).  Sec. 6662(d)(1).  In this context, the term "understatement" is defined as the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate.

(continued...)

the partnership item's tax treatment were adequately disclosed in the partner's separate return or in a statement attached to that return requires an examination of the return and is a partner-level defense that cannot be asserted in the partnership-level proceeding. Another example would be a claim by a partner that the penalty for substantial understatement of tax does not apply because the tax reported on his return is not a substantial understatement of the correct tax owed. These defenses require an examination of the partner's separate return.

By contrast, deciding whether a particular partner reasonably relied on the advice of a competent tax adviser generally would not require the Court to examine that partner's return. Deciding whether Mr. Logan and the Logan Trusts--and The Batts Group, if it also received a Curtis Mallet opinion--were entitled to rely on the Curtis Mallet opinion would not require an examination of their separate returns; the facts necessary to prove they were entitled to rely on the Curtis Mallet opinion and that such reliance was reasonable to support a reasonable cause defense to partnership-item penalties would not depend on their separate returns.

---

[21](...continued)
Sec. 6662(d)(2)(A). In determining whether an understatement of income tax is substantial, the amount of the understatement is reduced by any portion attributable to an item if there is or was substantial authority for the taxpayer's treatment of the item, or if the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached thereto. Sec. 6662(d)(2)(B).

### 3. Cannot Be Determined at Partnership Level

A partner-level defense is a defense that cannot be determined at the partnership level.  Defenses that are personal to the partner or depend on the partner's separate return cannot be decided at the partnership level because the Court is unable to decide on the basis of the evidence necessary and relevant to deciding the underlying adjustments in the FPAA whether the defense applies.

The temporary regulation provides examples of partner-level defenses that cannot be raised in the partnership-level proceeding, including, inter alia, whether the partner has satisfied the criteria of the reasonable cause exception under section 6664(c)(1) subject to partnership-level determinations as to the applicability of section 6664(c)(2).[22]  The example is appropriate and applies to situations where the partner claims reasonable cause and good faith on the basis of opinions and actions by advisers unrelated to the transaction.  This is because the validity of the defense cannot be decided on the

_____

[22]In Stobie Creek Invs., LLC v. United States, 82 Fed. Cl. 636, 703-704 (2008), the Court of Federal Claims held that the example in the temporary regulation did not permit the partners to raise similar defenses in the partnership-level proceeding. The Court of Federal Claims applied the example in the temporary regulation without considering the fact that the temporary regulation limits partner-level defenses to those defenses "'that are personal to the partner or are dependent upon the partner's separate return and cannot be determined at the partnership level.'"  Id. at 703 (quoting sec. 301.6221-1T(d), Temporary Proced. & Admin. Regs., supra).

basis of the evidence necessary and relevant to deciding the underlying adjustments in the FPAA.

On the other hand, the nature and character of a partnership's transactions are more appropriately determined at the partnership level than at the partner level. They are within the Court's scope of review in a partnership-level proceeding and the Court has jurisdiction to make findings concerning the character of the partnership's transactions. See River City Ranches #1 Ltd. v. Commissioner, 401 F.3d 1136, 1144 (9th Cir. 2005), affg. in part and revg. in part T.C. Memo. 2003-150. The status of an adviser as a promoter is a partnership-level issue when it is relevant to issues raised by the FPAA concerning the creation and operation of the partnership and the means and manner by which the partnership and partnership interests were created and sold. The opinion provided by a promoter to investors in the transactions and the circumstances in which the opinion was arranged for and provided to the investors are relevant to the underlying adjustments in the FPAA and are properly the subject of evidence in the partnership-level proceeding. Such matters are within the Court's scope of review in a partnership-level proceeding, as in the case at hand, and the Court has jurisdiction to make findings concerning the relationships of the putative promoter to the partnership.

Whether the adviser upon whose opinion the partner claims to have relied is a promoter of the transactions and, if so, whether

the adviser's opinion is inherently unreliable can be decided on the basis of the evidence necessary and relevant to deciding the underlying adjustments in the FPAA; they would be more appropriately determined at the partnership level.

### 4. If Curtis Mallet Was a Promoter

We have held that whether Curtis Mallet was a promoter of the transactions at issue is to be decided in this partnership-level proceeding. Curtis Mallet may have provided opinions to The Batts Group substantially similar to its opinions to Mr. Logan and the Logan Trusts. Indeed, respondent may prove that Curtis Mallet provided substantially identical opinions to all, most, many, or some of the other investors who participated in Sentinel-promoted paired-option partnership transactions. In that event, the Curtis Mallet opinion and the circumstances in which it was arranged, provided for, prepared, and produced by Curtis Mallet and obtained, received, and paid for by Mr. Logan, the Logan Trusts, The Batts Group, and other investors who participated in similar Sentinel-promoted paired-option partnership transactions would be proper subjects of evidence in this proceeding. See supra note 20. In considering that evidence, the Court has jurisdiction to decide whether Curtis Mallet was a promoter and whether the circumstances in which the Curtis Mallet opinion was arranged for and provided to investors in the paired-option partnership transactions promoted by Sentinel prove that the opinion is inherently unreliable. If the

Court should decide that Curtis Mallet was a promoter of the transactions at issue and that the Curtis Mallet opinion was inherently unreliable, reliance on the opinion would not be a partner-level defense. In that event, the Court would have jurisdiction to decide whether Mr. Logan and the Logan Trusts could reasonably rely on the Curtis Mallet opinion.

By contrast, Mr. Logan might well have partner-level defenses to the partnership-item penalties on the basis of advice he may have received and relied on from other tax, legal, financial, and accounting advisers, defenses that the temporary regulation prevents him from raising in this partnership-level proceeding.

### 5. If Curtis Mallet Was Not a Promoter

If we should decide in this partnership-level proceeding that Curtis Mallet was not a promoter, deciding whether Mr. Logan and the Logan Trusts reasonably relied on the Curtis Mallet opinion would require an examination of facts personal to Mr. Logan and the trusts, including Mr. Logan's education and business experience and the nature and extent of his relationship with Curtis Mallet. It would be a partner-level defense as defined by the temporary regulation that we would not have jurisdiction to decide in this partnership-level proceeding.

### 6. Conclusion

If we should sustain the FPAA determinations that Tigers Eye or Mr. Logan's transactions with Tigers Eye must be disregarded

and that the accuracy-related penalties otherwise apply, reliance on the Curtis Mallet opinion by Mr. Logan and the Logan Trusts would be assertable and decided in this partnership-level proceeding only if the Court should decide that Curtis Mallet was a promoter and that the Curtis Mallet opinion was inherently unreliable.  If we should hold that Curtis Mallet was not a promoter, Mr. Logan's and the Logan Trusts' reliance on the Curtis Mallet opinion would be a partner-level defense that could not be decided in this partnership-level proceeding.  Since reliance on the Curtis Mallet opinion would not be a partner-level defense should we decide that Curtis Mallet was a promoter, at this time we cannot conclude that Mr. Smith's report must be excluded on jurisdictional grounds.

F.   Legal Conclusions and Advocacy of Mr. Logan's Position in the Smith Report

Respondent next argues that the Smith report should be excluded because it consists of legal conclusions.  We agree.

Proceedings in this Court are conducted in accordance with the Federal Rules of Evidence.  Pursuant to Rule 143(a) expert testimony is admissible under rule 702[23] of the Federal Rules of

---

[23]Fed. R. Evid. 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is

(continued...)

Evidence if it assists the Court to understand the evidence or to determine a fact in issue.  Sunoco, Inc. & Subs. v. Commissioner, 118 T.C. 181, 183 (2002).  Expert opinion about what the law is or how to apply law to facts does not "assist the trier of fact to understand the evidence or to determine a fact in issue".  See Fed. R. Evid. 702.  "Each courtroom comes equipped with a 'legal expert,' called a judge".  Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207, 1213 (D.C. Cir. 1997); see also Specht v. Jensen, 853 F.2d 805, 807 (10th Cir. 1988) ("'There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge'" (quoting Stoebuck, "Opinions on Ultimate Facts: Status, Trends, and a Note of Caution", 41 Denv. L. Ctr. J. 226, 237 (1964))).  "This holds just as true when the finder of fact is the court, if not more so; the court is well equipped to instruct itself on the law."  Stobie Creek Invs., LLC v. United States, 81 Fed. Cl. 358, 360-361 (2008).  Courts routinely exclude expert opinion on legal issues.  See, e.g., Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 100 (1st Cir. 1997) (ruling inadmissible expert testimony regarding holdings of cases on statutory categorization of public employees, but upholding trial verdict as product of harmless

[23](...continued)
based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

error); Burkhart v. Wash. Metro. Area Transit Auth., supra at 1213 (reversing trial court's admission of expert testimony on legal issues at trial whether legal standards of Americans with Disabilities Act satisfied); Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995) (finding reversible error in trial court's admission of expert testimony on whether police conduct violated fourth amendment standards); United States v. Leo, 941 F.2d 181, 196 (3d Cir. 1991) (upholding trial court's limiting of expert testimony regarding credibility and stating that "While it is not permissible for a witness to testify as to the governing law", trial court did not abuse discretion in allowing expert to testify on relevant industry practice); Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990) (finding abuse of discretion where trial court allowed expert testimony on legal duty to hire tax counsel); Adalman v. Baker, Watts & Co., 807 F.2d 359, 365-368 (4th Cir. 1986) (reversing and remanding trial court's admission of expert testimony on meaning and applicability of securities laws), abrogated on other grounds by Pinter v. Dahl, 486 U.S. 622, 650 (1988)); United States v. Vreeken, 803 F.2d 1085, 1091 (10th Cir. 1986) (ruling trial court properly excluded expert testimony of complexity of tax and banking law); United States v. Curtis, 782 F.2d 593, 599 (6th Cir. 1986) (affirming lower court's grant of motion in limine to exclude expert testimony on unsettled nature of tax law regarding willfulness); Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th

Cir. 1983) (affirming trial court for properly overruling objection to expert's testimony on factual cause of accident and admitting testimony which did not concern legal cause of accident); <u>Ward v. Westland Plastics, Inc.</u>, 651 F.2d 1266, 1270 (9th Cir. 1980) (holding trial court judge correctly excluded expert testimony that plaintiff was discriminated against on account of sex); <u>Marx & Co. v. Diners' Club, Inc.</u>, 550 F.2d 505, 509-510 (2d Cir. 1977) (reversing and remanding trial court's admission of expert testimony concerning legal obligations of parties to contract); <u>Loeb v. Hammond</u>, 407 F.2d 779, 781 (7th Cir. 1969) (finding no error in trial court's exclusion of expert testimony on legal significance of documents, a matter of contract interpretation).

In support of the second ground for complete exclusion, respondent's supplement cites Judge Miller's Memorandum Opinion and Order in <u>Stobie Creek Invs., LLC v. United States</u>, 81 Fed. Cl. 358 (2008), excluding the testimony of Mr. Smith and Professor Ira B. Shepard offered in the partnership-level challenge to the FPAA in that Son-of-BOSS case.[24]  Judge Miller

---

[24]Recently, in an unpublished opinion of the U.S. Court of Federal Claims, <u>Murfam Farms, LLC v. United States</u>, No. 1:06-cv-00245 (Sept. 19, 2008), then Chief Judge Damich in a partnership-level proceeding granted in part and denied in part the Government's motion to exclude an expert report of Mr. Smith that opinions provided to the taxpayers by the Proskauer Rose law firm "were of the type, character, and quality upon which a taxpayer could reasonably rely".  Chief Judge Damich allowed the bulk of Mr. Smith's report to be introduced into evidence on the ground
(continued...)

found that the plaintiff's legal experts, including Mr. Smith, whose report was similar in many respects to the Smith report in the case at hand, were in effect applying law to the facts and, in expressing legal conclusions, purporting to tell the trier of fact how it should decide a disputed issue. Therefore Judge Miller held that the reports did not "assist" the trier of fact in the manner contemplated by rule 702 of the Federal Rules of Evidence and were inadmissible.

In the case at hand the Smith report analyzes how the Curtis Mallet opinion fulfills the requirements of Treasury Department Circular No. 230, 31 C.F.R. secs. 10.0-10.93, and concludes that the Curtis Mallet opinion for Mr. Logan and the Logan Trusts is

---

[24](...continued)
that it "merely analyzes whether the Proskauer Rose opinions contain enough factual information and legal analysis such that a taxpayer could rely upon it [sic]," but excluded two selected passages of the report as containing unhelpful legal analysis and advocacy. The Murfam Farms opinion did not address the possibility that the report should be excluded as being proffered in aid of partner-level defenses to penalties that the Court of Federal Claims lacked jurisdiction to consider in the pending proceeding. Soon thereafter, however, on Oct. 31, 2008, Judge Damich issued an order in the Murfam Farms case denying the plaintiffs' motion to confirm jurisdiction to hear their reasonable cause defenses to the accuracy-related penalties determined in the FPAA. The ground of the motion was that each plaintiff was the managing partner of his respective partnership and thus would be mounting a partnership-level defense to the penalties determined against him. Judge Damich was not willing to accept at face value the characterization in the governing agreements that every member partner was a manager; Judge Damich concluded that each partner's involvement in and knowledge of the transactions conducted by the partnerships should be explored at trial. Judge Damich found that there was a genuine issue of material fact as to the identity of the managing member partners and therefore denied plaintiffs' motion.

of the quality and character upon which taxpayers such as they could reasonably rely in preparing their tax returns.  The Smith report does not assist the Court in understanding the evidence or determining a fact in issue.  It merely advocates Mr. Logan's position and is not admissible for such purposes.  Sunoco, Inc. & Subs. v. Commissioner, 118 T.C. at 183-184; Alumax, Inc. v. Commissioner, 109 T.C. 133 (1997), affd. 165 F.3d 822 (11th Cir. 1999); Hosp. Corp. of Am. v. Commissioner, 109 T.C. 21 (1997); Snap-Drape, Inc. v. Commissioner, 105 T.C. 16, 20 (1995), affd. 98 F.3d 194 (5th Cir. 1996); Estate of Halas v. Commissioner, 94 T.C. 570, 577 (1990); Laureys v. Commissioner, 92 T.C. 101, 129 (1989); Estate of Carpenter v. Commissioner, T.C. Memo. 1993-97. We conclude that the Smith report does not assist the Court in understanding the factual questions in issue and is not admissible.  Accordingly, we shall grant respondent's motion in limine.

## Afterword

In addition to deciding the issues directly raised by the parties' motions, we have held that we have jurisdiction in this partnership-level proceeding to decide whether the Curtis Mallet firm was a promoter of the transactions in issue.  Our decision on the promoter issue will have an impact on whether reliance on the Curtis Mallet opinion by Mr. Logan and the Logan Trusts is a partnership-level defense (over which we have jurisdiction) or a partner-level defense (over which we lack jurisdiction).  We have

also recognized that Mr. Logan may have other partner-level defenses to the partnership-item penalties on the basis of advice he may have received and reasonably relied on from other tax, legal, financial, and accounting advisers that he could raise only in a refund action. See sec. 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., supra.

Against the background of our holdings and their implications, it bears noting that TRA 1997 has created problems of judicial administration that Congress may not have anticipated.[25]  The problem faced by Mr. Logan and other investors who participated in Sentinel-promoted transactions or other Son-of-BOSS transactions is not the temporary regulation (now permanent)--which gives effect to what would appear to be the legislative intent.  Rather, it is TRA 1997, which, for the first time since 1924, denies taxpayers a prepayment forum for the determination of penalties on income tax deficiencies.[26]

Although deficiency procedures continue to apply to other affected items, deficiency procedures do not apply to partnership-item penalties regardless of whether further partner-level determinations are required.  Sec.

---

[25]See comments in a somewhat similar vein in the concluding paragraphs of Domulewicz v. Commissioner, 129 T.C. 11, 23-24 (2007).

[26]See Pisem, "What Happened to My Prepayment Forum?  The Penalty Problem in TEFRA Partnership Audit Cases", 108 J. Tax. 269 (May 2008).

6230(a)(2)(A)(i); <u>Domulewicz v. Commissioner</u>, 129 T.C. 11, 23 (2007); see also <u>Fears v. Commissioner</u>, 129 T.C. 8 (2007). Consequently, although the Court has jurisdiction in a partnership-level proceeding to decide whether a partnership-item penalty applies and in a partner-level proceeding to decide the amount of the deficiency to which a partnership-item penalty applies, it does not have jurisdiction to decide the amount of the penalty or to consider any partner-level defenses in either proceeding. <u>Domulewicz v. Commissioner</u>, <u>supra</u>. The Commissioner may assess a partnership-item penalty before the deficiency to which the penalty relates is adjudicated, <u>id.</u> at 23; the partner must pay the assessed penalty and raise his partner-level defenses in a refund proceeding, sec. 6230(c)(4); sec. 301.6221-1T(c) and(d), Temporary Proced. & Admin. Regs., <u>supra</u>.

As observed <u>supra</u> Part II, this splitting of the procedure for determining penalties not only has implications for taxpayer rights; it also has practical consequences for judicial administration generally and the conduct of the trial in the case at hand.

The original purpose of TEFRA was "to promote increased compliance and more efficient administration of the tax laws." H. Conf. Rept. 97-760, at 600 (1982), 1982-2 C.B. 600, 662. To that end, TEFRA provided a procedure making it unnecessary for the Commissioner to initiate multiple proceedings against all the partners of a partnership. Instead, by means of the FPAA, he

could determine in one proceeding at the partnership level the income tax consequences to the partners of the actions of the partnership.  In TEFRA title IV, Congress provided that the tax treatment of any "partnership item" of certain partnerships should be decided at the partnership level.  Sec. 6221.  After the partnership-level proceedings had been completed, the Commissioner would be able to assess and collect against the partners directly deficiencies attributable to computational items based on adjustments of partnership items.  But the Commissioner was required, with respect to affected items, including penalties, to issue a notice of deficiency to each partner, thereby giving the partner the right to file a Tax Court petition and to postpone (and perhaps avoid) assessment and collection of the deficiency and penalties until the Tax Court should decide those aspects of the case at the partner level. See sec. 6230(a)(2); sec. 301.6231(a)(5)-1T(c), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, 1987).

Even if a petition challenging the FPAA were filed in a court other than the Tax Court, with the effect that any tax deficiency attributable to the FPAA adjustments could be assessed without further judicial review, penalties attributable to partnership items still required application of the deficiency procedures after completion of partnership-level proceedings.

TRA 1997 represents a partial return to the Revenue Act of 1924, which created the Board of Tax Appeals.  Under the Revenue

Act of 1924, if the Government prevailed before the Board, the deficiency could be immediately assessed and collected. Although the taxpayer could not directly appeal the Board's decision to a higher court, the taxpayer could file a claim for refund with the predecessor of the IRS and, upon denial of the claim, bring a refund action in a District Court or the Court of Claims. See Dubroff, The United State Tax Court--An Historical Analysis 77-78 (1979). This approach was promptly repealed by the Revenue Act of 1926, which provided for Court of Appeals review and finality of Board decisions. Id. at 118. The approach adopted by the Revenue Act of 1926 has continued to apply to the Tax Court to the present day, with the exception carved out by TRA 1997 with respect to penalties in TEFRA cases.

TRA 1997 and the regulations promulgated thereunder give the Tax Court the task of determining in a partnership-level challenge to an FPAA whether penalties apply to any deficiency that would result from a decision in favor of the Government on the merits and then provide for the assessment against and collection of both the deficiency and the penalties from each partner. Only thereafter do they allow a partner to assert his individual partner-level reasonable cause defenses to the penalties in a refund action in a District Court or the Court of Federal Claims. TRA 1997 and the regulations thereby result in "splitting a cause of action" with respect to penalties in TEFRA proceedings. As defined in Black's Law Dictionary 1937 (8th ed.

2004), "splitting a cause of action" is: "Separating parts of a demand and pursuing it piecemeal; presenting only a part of a claim in one lawsuit, leaving the rest for a second suit. This practice has long been considered procedurally impermissible."

The prohibition against splitting a cause of action is common law doctrine. Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 460-461 (1943) (Black, J., dissenting). Congress, of course, has the power to define and restrict the jurisdiction of the Federal courts, Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. ___, 128 S. Ct. 761, 773 (2008) ("The decision to extend the cause of action is for Congress, not for us."); Wilder v. Va. Hosp. Association, 496 U.S. 498, 509, n.9 (1990) (requirement of congressional intent "reflects a concern, grounded in separation of powers, that Congress rather than the courts controls the availability of remedies for violations of statutes"), particularly a statutory court such as the Tax Court, sec. 7442 ("The Tax Court * * * shall have such jurisdiction as is conferred on * * * [it] by this title"); Estate of Smith v. Commissioner, 429 F.3d 533, 537 (5th Cir. 2005) ("The Tax Court may exercise jurisdiction only to the extent that jurisdiction has been conferred upon it by Congress." (citing Commissioner v. McCoy, 484 U.S. 3, 7 (1987))), vacating 123 T.C. 15 (2004).

The TRA 1997 rationale to add penalty determinations to partnership-level proceedings and to split them from the partner-level defenses to the penalties was stated as follows: "applying penalties at the partner level through the deficiency procedures following the conclusion of the unified proceeding at the partnership level increases the administrative burden on the IRS and can significantly increase the Tax Court's inventory." H. Rept. 105-148, at 594 (1997), 1997-4 C.B. (Vol. 1) 319, 916.

This rationale obviously applies to "middle class" tax shelter partnerships with scores of partners, such as the Hoyt cattle and sheep-breeding partnerships.  See, e.g., River City Ranches #1 Ltd. v. Commissioner, 401 F.3d 1136 (9th Cir. 2005); see also Durham Farms #1, J.V. v. Commissioner, T.C. Memo. 2000-159, affd. 59 Fed. Appx. 952 (9th Cir. 2003); River City Ranches #4, J.V. v. Commissioner, T.C. Memo. 1999-209, affd. 23 Fed. Appx. 744 (9th Cir. 2001); cf. Ertz v. Commissioner, T.C. Memo. 2007-15.  Although the tax deficiencies implicating accuracy-related penalties were attributable to events at the partnership level, the Hoyt partnerships have required multiple affected items partner-level proceedings to address the penalty determinations against individual partners.  See, e.g., Hansen v. Commissioner, 471 F.3d at 1028-1033; Mortensen v. Commissioner, 440 F.3d 375 (6th Cir. 2006); Van Scoten v. Commissioner, 439

F.3d 1243 (10th Cir. 2006); Sanders v. Commissioner, T.C. Memo. 2005-163.[27]

The TRA 1997 rationale makes less sense in Son-of-BOSS transactions and other tax shelters sold to multimillionaires, where each partnership usually has no more than one or two individuals or family groups as participants.  The new procedure under TRA 1997 makes it necessary, in cases in which the partnership-level determinations are sustained, to educate two different courts (or at least two different judges) in the operation of the same complex set of transactions.  One court has the task of determining the validity of the FPAA determinations which, if sustained, will lead to deficiency and penalty assessments by way of computational adjustments.  Another court, in a refund suit to recover the penalties, must determine the validity of the participating partner's partner-level defenses to

---

[27]Another type of tax shelter antedating TRA 1997 that has spawned numerous affected items proceedings to determine additions to tax have been the jojoba tax shelter TEFRA partnerships.  See Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6 (partnership-level proceeding sustaining FPAA adjustments); see also Altman v. Commissioner, T.C. Memo. 2008-290; Watson v. Commissioner, T.C. Memo. 2008-276; Helbig v. Commissioner, T.C. Memo. 2008-243; Bass v. Commissioner, T.C. Memo. 2007-361, affd. without published opinion 2009-1 USTC par. 50,332, 103 AFTR 2d 2009-1624 (11th Cir. 2009); Finazzo v. Commissioner, T.C. Memo. 2002-56; Welch v. Commissioner, T.C. Memo. 2002-39; Christensen v. Commissioner, T.C. Memo. 2001-185; Serfustini v. Commissioner, T.C. Memo. 2001-183; Carmena v. Commissioner, T.C. Memo. 2001-177; Nilsen v. Commissioner, T.C. Memo 2001-163 (affected items proceedings sustaining additions to tax arising from failed investments in jojoba tax-shelter partnerships).  But see Swanson v. Commissioner, T.C. Memo. 2009-31.

those penalties.  If the partnership-level adjustments should require an affected items partner-level proceeding to determine the deficiencies and penalties, three proceedings would be required, because the partner-level defenses to the penalties could not be raised in the affected-items deficiency proceeding.

The new procedure also creates complex logistical problems in the conduct of trials by the first court in the FPAA proceeding.  Particularly where a participating partner acted as the managing partner or tax matters partner, the new procedure aggravates the problem of deciding whether each item of that partner's proffered testimony relates to partnership-level or partner-level matters and defenses.  Cf. Murfam Farms order of Oct. 31, 2008, supra note 24.  Rather than promote efficiency and economical use of judicial, party, and attorney resources, the new regime would appear to have increased substantially the burdens on the judicial branch and costs and delay to litigants.[28]

It might be objected that a similar splitting of deficiency determinations obtains under the original TEFRA procedures:

---

[28]Notwithstanding that taxpayers have no constitutional right to a prepayment forum, see Phillips v. Commissioner, 283 U.S. 589, 596-597 (1931), the availability of the Tax Court as the prepayment forum to redetermine liabilities for Federal income taxes and associated penalties, although it originated in an act of legislative grace, has acquired--over the more than 70-year period since its inception--the status of a prescriptive right in the minds of tax practitioners and members of the public.  See supra note 26.

between the partnership-level proceeding to determine the validity of the FPAA adjustments and the partner-level affected items proceeding that may be needed to determine the deficiencies and the penalties of the individual partners. But at least under the original TEFRA procedure both the legal and factual requirements for the imposition of the accuracy-related penalties and the partner's defenses to those penalties were considered in the same proceeding in one court. It also bears observing that the original TEPRA procedures were the product of a legislative judgment that the benefits of having partnership-level adjustments made by the FPAA apply across the board to multiple partners outweighed the problems that might be encountered in applying these adjustments to the individual partners in multiple affected items proceedings.

The foregoing observations lead to the question whether any technique might be available under which "one-stop shopping" could be made available in partnership cases in which the partnership has no more than a handful of participating partners. "One-stop shopping" in the case at hand would mean that all issues relating to the tax and penalty liabilities of a participating partner or partners could be decided in one court in one proceeding. One example, of course, is where the small partnership exception of section 6231(a)(1)(B) applies. New Phoenix Sunrise Corp. & Subs. v. Commissioner, 132 T.C. ___ (2009), exemplifies the efficiencies of one-stop shopping where

the small partnership exception applies; both the deficiency and the penalties were redetermined in one proceeding in this Court.

These musings have been cut short by the realization that the Secretary appears to have recently recognized and responded to the observed problems. The Secretary has proposed regulations that would enable the Commissioner to convert partnership items to nonpartnership items in the case of listed transactions and thereby provide for "one-stop shopping" through application of the traditional deficiency procedures to such transactions. See supra Part I.D. It is regrettable that the proposed regulations would not provide relief in the case at hand or the myriad of other pending Son-of-BOSS cases subject to the TEFRA procedures as amended by TRA 1997 and implemented by the regulations currently in effect.[29]

On the basis of the rulings in the foregoing discussion,

> Appropriate orders will be issued, denying participating partner's motion for partial summary judgment and granting respondent's motion in limine.

---

[29]Timely application of the procedures provided by the proposed regulations might also reduce opportunities for gaming the statutes of limitations where multiple passthrough entities have interests in what would otherwise remain a TEFRA partnership. Cf., e.g., JTUSA, LP. v. Commissioner, 131 T.C. ___ (2008).